The STATE of Texas, Appellant,

v.

Robert A. MULLER, Appellee.

No. 160–91.

Court of Criminal Appeals of Texas,
En Banc.

April 1, 1992.

Rehearing Denied May 20, 1992.

J. Gary Trichter, Kimberly De La Garza,
Mike DeGeurin, Brian C. Wice, Houston,
for appellee.

John B. Holmes, Jr., Dist. Atty., Winston
E. Cochran, Jr. and Joe King, Asst. Dist.

Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellee was charged by information with operating a motor vehicle in a public place while intoxicated. Tex.Rev.Civ.Stat. art. 67011–1 et seq. Appellee filed a pretrial motion to suppress an intoxilyzer breath test result and to strike a paragraph of the state's information. The trial court granted appellee's motion and the State timely filed a notice of appeal, pursuant to Tex.Code Crim.Proc. art. 44.01.[1] More than eight months after the original notice of appeal was filed, the State filed an amended notice of appeal with permission of the court of appeals. The First Court of Appeals reversed the ruling of the trial court, ordered the information reinstated and remanded the case for trial. *State v. Muller*, 798 S.W.2d 315 (Tex.App.—Hous-ton [1st Dist.] 1990). We granted the appellee's petition for discretionary review to determine: (1) whether the State's original notice of appeal complied with Article 44.-01, and (2) if not, whether the State was entitled to cure the defective notice by filing an amended notice of appeal. We will reverse.

### I.

On appeal to the First Court of Appeals, appellee argued that the State's original notice of appeal, although timely filed on February 17, 1989, was defective because it had not been signed by the elected District Attorney of Harris County, John B. Holmes, Jr., as required by Article 44.01.[2] At oral argument before the court of appeals, the State identified the signature on the notice as that of the first assistant to Holmes.

On October 30, 1989, some eight months after the original filing of the notice of appeal, the State filed both (1) a motion for leave to file an amended notice of appeal, and (2) an amended notice of appeal.[3] The

---

1. Tex.Code Crim.Proc.Code art. 44.01 provides in relevant part:

    (a) The state is entitled to appeal an order of a court in a criminal case if the order:

    (1) dismisses an indictment, information, or complaint or any portion of an indictment, information or complaint;

    \* \* \* \* \* \*

    [or]

    \* \* \* \* \* \*

    (5) grants a motion to suppress evidence, a confession or an admission, if jeopardy has not attached in the case and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession, or admission is of substantial importance to the case.

    \* \* \* \* \* \*

    (d) The Prosecuting Attorney may not make an appeal under subsection (a) or (b) of this article later than the 15th day after the date on which the order, ruling, or sentence to be appealed is entered by the court.

    \* \* \* \* \* \*

    (i) In this article, "prosecuting attorney" means the county attorney, district attorney, or criminal district attorney who has the primary responsibility of prosecuting cases in the court hearing the case and does not include an assistant prosecuting attorney.

2. The State's notice of appeal read in relevant part: "The State of Texas now gives written notice of appeal to the Court of Appeals sitting at Houston, Texas. I certify to this Court that this appeal is not taken for the purpose of delay and that the evidence suppressed in this cause is of substantial importance." The second page of the notice of appeal was signed, "John B. Holmes, Jr., by [undecipherable signature]."

3. The amended notice of appeal read, in relevant part:

    The original notice of appeal in this cause was executed by the First Assistant District Attorney on a date that the undersigned John B. Holmes, Jr., the Harris County District Attorney, was out of town. The First Assistant is fully authorized to execute the functions of the District Attorney in the District Attorney's absence.

    \* \* \* \* \* \*

    The undersigned submits that the First Assistant's signature was adequate and that the appellee should be estopped from challenging the validity of the appeal at this late date but submits this amended notice of appeal out of an abundance of caution.

    Accordingly, on this the 30th day of October, 1989, the Harris County District Attorney hereby submits amended notice of appeal in this cause....

    Respectfully Submitted
    [Signature]
    John B. Holmes, Jr.
    Harris County, Texas.

court of appeals granted the State's motion and ordered the record supplemented with the amended notice of appeal. The court of appeals then reversed the judgment of the trial court and ordered the information reinstated. This first opinion was subsequently withdrawn and a second opinion issued on appellee's motion for rehearing. *State v. Muller*, 798 S.W.2d 315 (Tex. App.—Houston [1st Dist.] 1990).

In its opinion on rehearing, the court of appeals held that when the State filed the amended notice of appeal it cured any defect in the original notice. *Muller*, supra at 317–18. The court of appeals then assumed jurisdiction over the case and again ordered the information reinstated and remanded the case for trial. *Id.* at 318. En route to its decision, the court of appeals held that Article 44.01 does not require the "prosecuting attorney," as designated therein, to personally sign the written notice of appeal:

> We find it improbable that the legislature intended that the State may only appeal *if, but only if,* the district attorney personally signs the notice of appeal. There are many occasions when the district attorney may be compelled to be "out of state," or "at other places," and is not physically present to sign the notice of appeal. It is, therefore, logical that some other "prosecuting attorney" would be authorized to sign the name of the district attorney, *or* that an amendment of that notice of appeal could be filed with the court to "show" the district attorney's intent and consent, as occurred in this cause.

*Muller*, supra at 318.

Justice Michol O'Connor filed a written dissent on the issue of amending the notice of appeal, arguing that because the prosecuting attorney did not sign the original notice of appeal, and because the certification required by Article 44.01(a)(5) was not made until nine months after the judgment, the State did not perfect its appeal and the court of appeals did not have jurisdiction over the case. *Id.* at 326.

## II.

The arguments of the parties can be distilled as follows. First, appellee contends that the notice of appeal filed by the State was invalid because Article 44.01 requires that a State's notice of appeal must manifest "some indication that [the prosecuting attorney] intended to appeal." Appellee argues that:

> Clearly, the requirement that the district attorney himself initiate and personally certify the appeal is legislatively mandated to make the State's appellate process not only a hard one, but also, a limited one. Here, the limitation was to require the district attorney to *personally decide* to appeal a case on the front end and not after the appeal had been filed and the 15 day filing period expired.

Appellee further argues that the provisions of Article 44.01 are specific limitations on the State's substantive right to appeal. Thus, claims appellee, the State's noncompliance with the provisions of Article 44.01 deprives an appellate court of jurisdiction to hear the case. Appellee asserts that because Article 44.01 is an embodiment of the State's substantive right to appeal, it would be error to allow the Rules of Appellate Procedure to enlarge this substantive right by circumventing the clear limitations set forth in Article 44.01.

The State counters that because Article 44.01 does not expressly require the signature of the prosecuting attorney to appear on an original notice of appeal, it would be disingenuous to read such a requirement into the statute. The State's argument, essentially, is that, when read as a whole, the language of Article 44.01 does not require the personal signature of the prosecuting attorney. The State asserts that even if subsection (a)(5) were construed to require a written certification by the prosecutor, this requirement should not be extended to appeals brought under any other subsection. The State avers that section (d) refers only to the time within which an appeal must be made, and has nothing to

do with requiring the prosecuting attorney to personally make the appeal.

The State then asserts that the legislative intent supports its construction of Article 44.01. The State further argues that nothing in Article 44.01 indicates that it is intended to address appellate jurisdiction. Finally, the State contends that even if Article 44.01 requires the prosecuting attorney's signature, the Texas Rules of Appellate Procedure provide a means for correcting and amending defects in the original notice of appeal, whether those defects are of form or substance.

### III.

■ In deciding whether the State's original notice of appeal was defective, we are called on to interpret Article 44.01 with regard to the specific procedures the State must follow to properly appeal an adverse ruling of a trial court. This Court's recent decision in *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Cr.App.1991), delimits with great specificity the appropriate role of the courts in construing statutes. In *Boykin*, we held that when interpreting a statute an appellate court should "necessarily focus ... on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment." *Id.* When the literal text of a statute is clear, an appellate court must give effect to the statute's plain language and purposely eschew reliance on its legislative history. *Boykin*, supra at 785.

■ It is only when the literal text of the statute is either unclear or would lead to results so absurd that the Legislature could not *possibly* have intended them, that the courts should then resort to legislative history or other extraneous means to assist them in their interpretation of a statute. *Id.;* see also, *Faulk v. State*, 608 S.W.2d 625, 630 (Tex.Cr.App.1980).

### IV.

With regard to the instant case, our established method of statutory construction makes it manifestly apparent that if the literal text of Article 44.01 is clear on its face, this Court will not strain its plain meaning in order to give the statute a "desirable" reading. See, e.g., *Smith v. State*, 789 S.W.2d 590 (Tex.Cr.App.1990). Thus, we will delve into the labyrinth of legislative history only if our examination of the literal text of Article 44.01 discloses some obfuscation or patent ambiguity. Because, on its face, the literal text of Article 44.01 is clear, we will construe the statute according to its plain meaning and dispose of this case without reliance on its legislative history.[4]

We begin our analysis with the literal language of the relevant sections of Article 44.01 and attempt to discern its "fair, objective meaning ... at the time of its enactment." *Boykin*, supra at 785. In other words, we focus on the meaning a typical legislator would have given the specific language of the statute at the time of its enactment.

We begin with section (i) of Article 44.01, which defines the term "prosecuting attorney" as used in the article:

---

**4.** We note that when previously interpreting Article 44.01, this Court has turned to federal case law for assistance. This was because Article 44.01 was essentially adopted as a "foreign statute," taken from 18 U.S.C. § 3731. See *State v. Moreno*, 807 S.W.2d 327 (Tex.Cr.App.1991). In *Moreno* we looked to 18 U.S.C. 3731 and related federal cases for guidance in deciphering the intent of the Texas Legislature in adopting Tex. Code Crim.Proc. art. 44.01.

We further recognize that the equivalent federal statute does require certification by the United States Attorney to the district court that "the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding." See 18 U.S.C. § 3731. And there is federal case law suggest-

ing that the United States Attorney may freely delegate this task to his assistants. See *United States v. Wolk*, 466 F.2d 1143, 1146, n. 2 (8th Cir.1972) (stating that there is no compelling reason to "needlessly circumscribe the ability of the United States Attorney to delegate responsibility."). But the federal statute does not contain a provision analogous to 44.01(i) which *specifically* excludes the assistant prosecuting attorneys from deciding which notices of appeal the State will file.

Thus, because section (i) has no federal corollary, we find that reliance on federal case law would be an exercise in futility. For this reason we forego reliance on federal case law and turn our attention to the plain language of Article 44.01.

In this article, "prosecuting attorney" means the county attorney, district attorney, or criminal district attorney who has the primary responsibility of prosecuting cases in the court hearing the case and does not include an assistant prosecuting attorney.

Because it would have been difficult for the Legislature to have more clearly excluded assistant prosecutors from its definition of "prosecuting attorney," we interpret section (i) to mean what it plainly states on its face: a "prosecuting attorney," as used in Article 44.01, does not include under any circumstance an assistant prosecutor or other subordinate.

Our next determination is which of the various actions contemplated by Article 44.01 are required to be personally authorized by the "prosecuting attorney" and which actions, if any, may be delegated to subordinates.

In the instant case, the State appealed two separate actions by the trial court—the striking of a paragraph in the information and the suppression of evidence. The appeal of a dismissal of an information is governed by subsection (a)(1) of Article 44.-01, which states in relevant part: "The state is entitled to appeal an order [dismissing] an indictment, information, or complaint, or any portion of an indictment information, or complaint." The suppression of evidence is governed by subsection (a)(5) of Article, which states in relevant part: "The state is entitled to appeal an order [that] grants a motion to suppress evidence . . . if the *prosecuting attorney* certifies to the trial court that the appeal is not taken for the purpose of delay and . . . is of

substantial importance in the case." (Emphasis supplied.)

The plain language of subsection (a)(5) requires the prosecuting attorney to "certify" to the trial court that the appeal is not taken for purposes of delay and that the evidence is of substantial importance to the case. Clearly, the word "certify" contemplates a writing executed by the prosecuting attorney. See Black's Law Dictionary 288 (6th ed. 1990) ("Certify," defined as: "To authenticate or vouch for a thing in writing. To attest as being true or as represented.").

By contrast, subsection (a)(1) contains no corresponding certification requirement. In addition, subsection (a)(1) does not specifically state that it is the "prosecuting attorney" who must file an appeal of a dismissal of an indictment. The State argues that the differences between these two subsections militate towards a finding that even if subsection (a)(5) requires the prosecuting attorney to execute a written certification, neither subsection (a)(1) nor section (d) requires a prosecuting attorney to personally authorize a specific notice of appeal when the prosecuting attorney has delegated his authority to prosecute appeals to a subordinate.

■ Stated another way, the State asserts that because subsection (a)(5) explicitly requires a certification of the "prosecuting attorney," this inexorably leads to the conclusion that the prosecuting attorney is not required to personally make notices of appeal brought pursuant to other subsections—i.e., he may generally delegate to subordinates the responsibility of making appeals.[5] We disagree, and find that the

5. In support of their interpretation of Article 44.01, the State argues that the additional written certification required by the "prosecuting attorney" in subsection (a)(5) is demonstrative of an internal inconsistency in Article 44.01. We disagree, and find instead that it is merely an additional safeguard against frivolous appeals by the State. On examination, the rationale for such an added precaution becomes apparent.

An appeal brought under subsection (a)(1), et al., would clearly demonstrate, on its face, that the appeal was of substantial importance to the case, and an additional certification requirement would be superfluous. For example, an appeal of the dismissal of an indictment under subsection (a)(1) is per se of substantial importance because, for all intents and purposes, there is no way to continue the prosecution.

By contrast, an appeal under subsection (a)(5) is an interlocutory appeal of a trial judge's preliminary ruling. In such a case, it would not be clear simply from the filing of the appeal that the adverse trial ruling involved evidence of substantial importance to the case. For this reason, the statute demands an additional act on the part of the prosecuting attorney for an interlocutory appeal. In addition to personally

plain language of 44.01(d) militates toward the opposite conclusion.

When construing a statute, we must presume that the entire statute is intended to be effective. See, e.g., *Allegheny Mut. Cas. v. State*, 710 S.W.2d 139 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd). Thus, when the statute is read as a cohesive, integrated whole, it is apparent that appeals taken under subsections (a)(1) and (5) are further governed by section (d). Section (d) limits the amount of time in which the "prosecuting attorney" may make an appeal. The plain language of this section indicates two things: (1) this section limits the time within the State can file a notice of appeal to fifteen days; and (2) it limits the right to "make an appeal" on behalf of the State to *only* the "prosecuting attorney," as defined above. Using section (d) as a guide for understanding the implications of other provisions within the statute, we conclude that only the "prosecuting attorney" is authorized to "make an appeal" on behalf of the State—regardless of whether the appeal is made pursuant to subsection (a)(1) or (5).

### V.

We must next interpret the term "make an appeal," as used in section (d) of Article 44.01. When considered in light of section (i)'s express exclusion of assistant prosecutors from its definition of "prosecuting attorney," it is clear that the phrase "make an appeal" clearly requires—at the minimum—the prosecuting attorney to personally supervise and authorize the appeals to be undertaken by his office on behalf of the State. That is, the statute, when construed as an internally consistent and integrated whole, seeks to ensure that the prosecuting attorney himself personally authorize specific appeals filed on behalf of the State.

We do not suggest that Article 44.01 necessarily requires that a State's notice of appeal must, in all cases, reflect the personal signature of the prosecuting attorney. However, the plain meaning of the literal text of Article 44.01(d) requires the prosecuting attorney to "make an appeal" by personally authorizing—in some fashion—the specific notice of appeal in question. More specifically, to comply with the statute, he must either physically sign the notice of appeal *or* personally instruct and authorize a subordinate to sign the specific notice of appeal in question.[6] Because of the jurisdictional limitations of Article 44.01, discussed infra, we further read the statute to require this personal authorization to occur prior to the expiration of the fifteen day window of appeal.

We recognize that the statute places a significant burden on the prosecuting attorney. If he is unavailable during the window of opportunity for making an appeal,

approving the notice, the prosecuting attorney must *certify* that the appeal is not for the purpose of delay. This second requirement prevents the prosecuting attorney from filing interlocutory appeals simply to wear down a defendant by appealing noncritical rulings.

Thus, Article 44.01 contains two checks on the discretion of a prosecuting attorney's office. The first check is the requirement of approval from the prosecuting attorney. Requiring personal approval creates a bottleneck in the office of the prosecuting attorney through which all appeals must pass. An assistant does not have the discretion or personal authority to file a notice of appeal absent explicit instruction to do so by the prosecuting attorney.

The second check is on the discretion of the prosecuting attorney himself. For an interlocutory appeal under subsection (a)(5), the prosecuting attorney must, in addition to authorizing the notice of appeal, vouch for the fact that it is not being appealed simply for the purpose of

delay. The first check keeps the subordinates in the office from filing frivolous appeals; the second forces the prosecuting attorney to evaluate a second time the justification for the appeal.

**6.** Whenever a question is legitimately raised concerning the prosecuting attorney's personal authorization of a State's appeal, the State bears the burden of proving that the appeal in question was personally, expressly and specifically authorized by the prosecuting attorney. Thus, the appellate record must clearly reflect the prosecuting attorney's personal authorization of the *specific* notice of appeal filed in a given case. Without a signature or other written expressed authorization, as reflected in the appellate record, there would be no guarantee that the only person permitted by statute to make an appeal on behalf of the State actually participated in the process. Evidence of a general delegation of authority to an assistant does not qualify under the statute.

he must either return and sign the notice of appeal or personally authorize the filing of appeal in some other fashion. As should be apparent, a statement that the appeal is taken "by and through the prosecuting attorney" is not, of itself, adequate to fulfill the requirement of the statute, as it gives no assurance that the prosecuting attorney has performed the safeguard function demanded by a plain reading of the statute. The plain meaning of the literal text of

Article 44.01 is clear and unambiguous. And, although arguably burdensome on an elected prosecuting attorney, this procedure is not so absurd that it could not have possibly been contemplated by the legislature. Therefore, we interpret Article 44.01 according to its clear terms and plain language.[7]

■■■ In conclusion, we hold that Article 44.01 requires the elected "prosecuting at-

7. The First Court of Appeals held that it was "improbable" that the Legislature intended Article 44.01 to require a prosecuting attorney to personally sign the State's notice of appeal. It is important to restate again that under our established rules for statutory construction we look to a statute's legislative history *only* if the plain meaning of the literal text of that statute is ambiguous or leads to highly improbable results. That is not the situation in the instant case.

Even assuming, arguendo, that it would be appropriate to examine the legislative history of Article 44.01 in interpreting the plain meaning of its text, we find that the legislative history underlying Article 44.01 dictates the same conclusion we reached by applying the "plain meaning" doctrine.

From listening to the audio tapes of statements made on the House Floor and in the Senate and House Committees it is clear that many legislators were concerned that any legislation codifying the procedure through which the State could effect an appeal needed built-in safeguards against ill-considered or bad faith appeals. During the House floor debate of May 29th, 1987, Rep. Hury, the sponsor of H.B. 1035 stated in support, "I feel that the bill is so tightly drawn that it does what it is intended to do, and that is, to give the State a limited right to appeal."

Rep. Danburg, a member of the House Criminal Jurisprudence Committee, related the objectives of the prosecutors who had testified for passage of the bill during committee hearings: "They made it quite clear that they did not wish to be able to appeal every adverse ruling and not every guilty verdict in every single case they lost, for whatever reason. They really only wanted to be able to appeal the abusive ones...."

Rep. Danburg then inquired of Rep. Hury: "Is it your intention that this bill should only be applied to situations where there really is abuse and not to just every case the State loses, but should be very narrowly applied to abusive situations?" to which Hury responded, "Which is what I believe will happen."

The testimony before the House Criminal Jurisprudence Committee on May 6th, 1987, considering H.B. 1035, confirms the intent to limit the State's right to appeal. The hearing testimony suggests that the language of section (i),

referring to the prosecuting attorney, was designed specifically with this goal in mind.

Testimony before the Senate Criminal Justice Committee on April 21, 1987 (discussing S.J.R. 34 and S.B. 762) demonstrates a similar concern about the potential for prosecutorial abuse of the appellate privilege. When asked by Senator Lyons what controls are to be found in the bill, Rusty Hardin of the Harris County District Attorney's Office pointed to section (d) as a check against "individual assistants making the decision [to appeal]. *The D.A. would be controlling his resources, the D.A. would be controlling the decision as to what issues are important enough."*

Senators Lyons and Glasgow pressed other witnesses about prosecutors using the appellate mechanism to threaten misdemeanor offenders into guilty pleas. Knox Fitzpatrick, from the Dallas District Attorney's office, assured Senator Lyons that he could lay his fears to rest:

In the bill, there is a safeguard, *in that it would be the district attorney himself who would have to certify these appeals, the prosecuting attorney in this case would mean the county attorney, district attorney, or criminal district attorney, and does not include an assistant prosecuting attorney. This would be a safeguard I think so there wouldn't be these frivolous appeals ....*

Senator Lyons persisted, "What kind of safeguards do you have there ... about ... a real fire-breathing young misdemeanor prosecutor ... if he got upset at a ruling in a misdemeanor case by a judge?," to which Mr. Fitzpatrick responded, *"Under this section, it would have to be the county attorney, district attorney, or criminal district attorney ... who would have to certify."*

Thus, the debate on the House floor, as well as the testimony from the House and Senate Committees, serve only to underscore and confirm the plain reading of the statute. There was concern by legislators about frivolous State appeals taken only for the purpose of harassment and the additional costs an appeal would impose on misdemeanor defendants. With regard to all of these concerns, testimony in the committees referred the senators and representatives to sections (d) and (i) of the Bill, which place appellate authority solely in the hands of the prosecuting attorney, district attorney, or criminal district attorney.

torney" (and not his assistant) to "make" the State's notice of appeal, within the prescribed fifteen-day time period, either through the physical act of signing the notice or by personally and expressly authorizing an assistant to file a specific notice of appeal on his behalf. See footnote 6, supra. Because John B. Holmes, Jr., the "prosecuting attorney" with the primary responsibility of prosecuting cases in Harris County did not personally authorize the filing of the original notice of appeal in this case within the statutorily required fifteen day period, we hold that the original notice of appeal was defective.

## VI.

■ Having determined that the original notice of appeal filed in the instant case was defective, we must next decide whether the court of appeals was correct in holding that the State had the right to amend the original notice of appeal, thereby curing any defect in the original notice. The court of appeals based its holding on Tex. R.App.Pro. 83, which provides that no appeal shall be "dismissed for defects or irregularities, in appellate procedure, either of form or substance, without allowing a reasonable time to correct or amend such defects...."

However, the filing of a notice of appeal by an assistant prosecuting attorney is not a defect of *appellate procedure;* it is a failure to abide by the substantive statutory requirements of Tex.Code Crim.Proc. art. 44.01. In *State v. Demaret,* 764 S.W.2d 857, 858 (Tex.App.—Austin 1989, no pet.), the Austin Court of Appeals aptly held:

> The State argues, and we agree, that the Rules of Appellate Procedure are generally applicable to appeals by the State. However, the rules were not intended and may not be employed to en-

large the substantive rights of the litigants. In our view, art. 44.01(d) does more than merely prescribe a procedural guideline for filing the State's notice of appeal. Rather it limits the State's substantive authority to appeal.... On the sixteenth day [following entry of the court's order], the State's authority to appeal under the statute ceases to exist, and this court may not revive that right.

See also, e.g., *State v. McKinney,* 803 S.W.2d 374, 377 (Tex.App.—Houston [14th Dist.] 1990, no pet.) ("The State of Texas does not have the legal power to file a notice of appeal after its fifteenth day deadline has expired."); but see, *State v. Sanchez,* 800 S.W.2d 292, 299 (Tex.App.—Corpus Christi 1990, pet. granted) (amended notice of appeal cured defect, if any, in original notice that was signed and filed by an assistant prosecutor on behalf of the criminal district attorney). It was therefore error for the court of appeals to allow the State to amend the original notice of appeals by adding the required authorization after the fifteen-day filing period had elapsed.

In other words, the State's noncompliance with the specific provisions of Article 44.01 was a substantive failure to invoke the court of appeals' statutorily defined jurisdiction. This noncompliance was not susceptible to correction through application of the "amendment and cure" provisions of the Texas Rules of Appellate Procedure.[8] We hold that, under our well-established guidelines for statutory construction, it was manifestly improper for the court of appeals to read such a broad exception into the plain jurisdictional requirements of Article 44.01. As a consequence, the court of appeals erred in using the Rules of Appellate Procedure to create a jurisdictional-enlarging procedure neither expressly contained nor implicated by the literal text of the statute.[9]

---

**8.** Our rules of appellate procedure are inapposite when their application would be inconsistent with our state statutes. See *State v. Rosenbaum,* 818 S.W.2d 398, 404 (Tex.Cr.App. 1991)(Baird, J., concurring); Tex.Const. art. V., § 31(a). In any event, such a procedure would have been error even under our rules of appellate procedure: "These rules shall not be con-

strued to extend or limit the jurisdiction of the courts of appeals ... as established by law." Tex.R.App.Pro. 2(a).

**9.** We do not hold that it would necessarily be impossible for a prosecuting attorney who had, in fact, personally approved a notice of appeal within the fifteen day filing window to supple-

Article 44.01(d) expressly requires that the State can perfect an appeal only if (1) the notice of appeals is filed within fifteen days, and (2) the notice of appeal is "made" (i.e., signed or personally authorized) by the prosecuting attorney. In the case at bar, the record reflects that John B. Holmes, Jr., the prosecuting attorney, did not personally authorize the original notice of appeal. Therefore, at the time the fifteen day filing window had closed, the State had not yet complied with the express provisions of Article 44.01 and the court of appeals thus had no jurisdiction to hear the merits of the State's appeal.

Because the court of appeals was without jurisdiction to act in this case, the ruling of the trial court must be upheld. The judgment of the court of appeals is therefore reversed, and this case is remanded to the trial court for further proceedings not inconsistent with this opinion.

CLINTON, J., concurs in result.

MILLER, Judge, concurring.

I agree with the Court's holding today that only the "prosecuting attorney" is authorized to "make an appeal" on behalf of the State pursuant to Art. 44.01 [1], but I cannot agree with the analytical path the majority has traversed in reaching this conclusion.

I acknowledge that an overwhelming majority of this Court now adheres to the statutory construction rule that we will *only* consult legislative history when the plain meaning of the literal text of the statute is ambiguous or leads to highly improbable results. At pp. 808, 811 n. 7.

See also *Boykin v. State,* 818 S.W.2d 782 (Tex.Crim.App.1991). Nevertheless, I must continue to stress that "often ambiguity in a statute is not apparent until the legislative history is researched and the *true* legislative intent is discerned." *Boykin,* 818 S.W.2d at 789 (Miller, J., dissenting) (emphasis added). As I discussed in *Boykin,* this Court's own experiences bear witness to this statement. See *Id.* at 789–790, discussing *Studer v. State,* 799 S.W.2d 263 (Tex.Crim.App.1990), and *Dillehey v. State,* 815 S.W.2d 623 (Tex.Crim.App.1991). Only by researching the legislative histories of the statutes interpreted in both *Studer* and *Dillehey* was this Court able to discern the ills sought to be corrected by the legislature and then effectuate its intent in enacting those statutes.[2]

Moreover, the Court's adherence to this "plain language rule" ignores the statutory construction aids in the Government Code. Section 311.023 specifically provides:

> In construing a statute, *whether or not the statute is considered ambiguous on its face,* a court may consider among other matters the:
>
> (1) object sought to be attained;
>
> (2) circumstances under which the statute was enacted;
>
> (3) *legislative history;*
>
> (4) common law or former statutory provisions, including laws on the same or similar subjects;
>
> (5) consequences of a particular construction;
>
> (6) administrative construction of the statute; and
>
> (7) title (caption), preamble, and emergency provision. (emphasis added)

ment the record with evidence or an affidavit to that effect. In such a situation, the requirement of personal approval within the requisite time period would be fulfilled and the court of appeals empowered with jurisdiction—only the proof of such approval would be lacking from the notice of appeal.

This, however, was not the situation in the instant case. The district attorney acknowledges that he had never personally approved the notice of appeal before the expiration of the fifteen day time period. The amended notice states only that the first assistant was authorized to make such decisions in the prosecuting attorney's stead; which as discussed above, did not satisfy the statutory requirements set forth in Article 44.01.

1. See at p. 810.

2. The majority opinion begins its interpretive analysis by focusing on the meaning a "typical legislator" would have given the language of the statute at the time of its enactment. At p. 808. How can we, as "typical" judges I presume, even begin to know what a "typical" legislator is thinking. The very purpose of legislative history is to shed light on this exact subject matter. Also, what is a "typical legislator"?

This section, which this Court has utilized in prior interpretive cases [3], clearly does not require a finding of ambiguity in a statute before resort to legislative history may be taken.

Finally, the lack of a majority decision by the court of appeals, coupled with this Court's reversal of that decision, suggests to me that there is latent ambiguity in the statute, and confirms my belief that the majority opinion's interpretive analysis is incorrect. I am not comforted by the majority opinion's statement, in dicta, that the legislative history underlying Art. 44.01 dictates the same conclusion reached by applying the "plain meaning" rule. See at p. 811, n. 7. The majority may have reached the correct result in this case, but its continued failure to consider legislative history and appreciate its role in judicial interpretation of statutory law will only result in this Court effectuating *our perceived* intent of the legislature, rather than the real thing.

With these comments, I concur in the result only.

---

**3.** See, e.g., *Ward v. State,* 829 S.W.2d 787 (Tex. Crim.App.1992); *State v. Rosenbaum,* 818 S.W.2d 398 (Tex.Crim.App.1991); and *Studer,* 799 S.W.2d at 271.