# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00041-CR

**The State of Texas, Appellant**

**v.**

**Jimmie Dale White, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. 1030299, HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In June 2003, Jimmie Dale White was indicted for the murder of Michael Desjardins. White was alleged to have committed the offense over seventeen years earlier, in May 1986. White filed a motion to quash or dismiss the indictment on several grounds relating to prosecutorial delay and attendant loss of witnesses and evidence. The district court granted White's motion and dismissed the indictment. The State appeals. *See* Tex. Code Crim. Proc. Ann. art. 44.01(1) (West 2007). For the reasons explained herein, we will affirm the order.

## SUBJECT-MATTER JURISDICTION

Before turning to the merits of the State's appeal, we address a cross-point raised by White challenging this Court's subject-matter jurisdiction.[1] White urges that we lack jurisdiction

---

[1] The State urges that we have no subject-matter jurisdiction to consider White's complaint because "there is no jurisdiction for an appellate court to consider a cross-point of error on an issue

because the clerk's record establishes that the State failed to timely "make" its appeal within fifteen days after the district court's order, *see* Tex. Code Crim. Proc. Ann. art. 44.01(d), or to file its notice of appeal by that date. *See* Tex. R. App. P. 26.2(b). White observes that the State's notice of appeal bears a file stamp of January 18, 2007—the eighteenth day after the date of the district court's order—and does not indicate that the elected district attorney "made" the appeal by signing it on an earlier date.

White advanced similar arguments in a previous motion to dismiss the State's appeal for want of subject-matter jurisdiction. *See generally State v. White*, 261 S.W.3d 65 (Tex. App.—Austin 2007, no pet.); *State v. White*, 248 S.W.3d 310 (Tex. App.—Austin 2007, no pet.). We rejected White's contentions that the notice of appeal was untimely filed under the rules of appellate procedure, reasoning that rule 4.1(b) extended the filing deadline (which otherwise would have fallen on January 15, a legal holiday) until January 18 because uncontroverted evidence established that the clerk's office had been closed on the 16th and 17th due to inclement weather. *Id*. at 311-13; *see* Tex. R. App. P. 4.1(b). However, because "compliance with rule 4.1(b) does not obviate the strict requirement of article 44.01(d) that the elected district attorney "make" the State's appeal—by signing or personally authorizing the notice of appeal—within fifteen days of the

not appealed by the State under Code of Criminal Procedure Article 44.01." Whatever merit this contention might have in other contexts, we disagree with the State that we lack jurisdiction to consider White's challenge to our subject-matter jurisdiction. To the contrary, as White observes, it is fundamental that this Court always has subject-matter jurisdiction to determine its own jurisdiction, and that this question can be raised at any time, by any party, or by the Court itself. *See Puente v. State*, 71 S.W.3d 340, 343 (Tex. Crim. App. 2002); *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993); *State v. Guevara*, 172 S.W.3d 646, 647 n.1 (Tex. App.—San Antonio 2005, no pet.).

trial court's order," *White*, 248 S.W.3d at 313 (citing *State v. Muller*, 829 S.W.2d 805, 810 (Tex. Crim. App. 1992)), and we could not discern from the record when the State's appeal had been "made," we remanded to the district court to determine "[t]his unresolved fact." *Id*. at 313-14. On remand, the district court found that the elected district attorney had signed the notice of appeal on the tenth calendar day after the date of the district court's order. Accordingly, concluding that the State's appeal was both timely made and timely filed, we overruled White's motion to dismiss. *White*, 261 S.W.3d at 66-68.

In his cross-point, White urges us to revisit our previous analysis of his jurisdictional challenge and in considering evidence beyond the face of the notice of appeal and the accompanying certificate of service, both of which are dated January 18. For the reasons stated in our two prior opinions addressing his motion to dismiss, we overrule White's cross-point. We now turn to the merits of the State's appeal.

## STATE'S APPEAL

The State contends that the district court erred or abused its discretion in dismissing the indictment charging White with murder. "It is well established that there is no general authority that permits a trial court to dismiss a case without the prosecutor's consent." *State v. Mungia*, 119 S.W.3d 814, 816 (Tex. Crim. App. 2003). Instead, a trial court's decision to so act "is limited to those actions authorized by constitution, statute or common law." *Id*. (quoting *State v. Frye*, 897 S.W.2d 324, 330 (Tex. Crim. App. 1995)). A trial court may be authorized to dismiss an indictment as a remedy for a constitutional violation. *Id*. However, "[w]hile a trial court may dismiss a charging instrument to remedy a constitutional violation, the dismissal of an indictment

3

is 'a drastic measure only to be used in the most extraordinary circumstances.'" *Id*. (quoting *Frye*, 897 S.W.2d at 330). "Therefore, where there is no constitutional violation, or where the appellee's rights were violated but dismissal of the indictment was not necessary to neutralize the taint of the unconstitutional action, the trial court abuses its discretion in dismissing the charging instrument without the consent of the State." *Id*. (citing *State v. Terrazas*, 962 S.W.2d 38, 42 (Tex. Crim. App. 1998)); *see Ex parte Morales*, 212 S.W.3d 483, 503 (Tex. App.—Austin 2006, pet. ref'd) (reversing district court's dismissal of indictment when there was no constitutional violation).

In his motion to quash or dismiss the indictment, filed in July 2004, White argued that the prosecution violated the Due Process Clause of the U.S. Constitution and the Due Course of Law Clause of the Texas Constitution due to the seventeen-year delay in filing charges and intervening deaths of witnesses. White presented affidavits from his investigator and testimony in two evidentiary hearings, held in August 2004 and January 2005, purporting to establish that as many as twenty-seven witnesses who could have vouched for White's whereabouts around the time of the murder or had knowledge regarding other potential suspects had died during the intervening years.[2] There was evidence that several of these potential witnesses had died during the 1980s or 1990s,[3]

---

[2] Regarding pre-indictment delay, White's primary theme in the district court was that, as he put it, "[m]ost, if not all, of the cast of characters in this matter were and are homosexual men, a number of whom would be able to corroborate portions of the Defendant's defense but have died in the intervening years." White further asserted that because it was widely known during the 1980s that this population was being decimated by HIV/AIDS, the State acted with bad faith, if not deliberate intent to gain advantage, in delaying its investigation.

[3] Or the record was silent as to when the witness had died. *See Deeb v. State*, 815 S.W.2d 692, 706 (Tex. Crim. App. 1991) (not considering potential testimony of deceased witness in speedy trial prejudice analysis because "there was no proof that he died before or after appellant's indictment").

4

although White presented proof that at least one witness—who, according to White's investigator, had been a frequent patron of a bar where White and the victim had been prior to the murder—had died in 2004, after White's indictment. In January 2005, White supplemented his motion with case authorities regarding the implications of delay under both the Due Process Clause and the Sixth Amendment. *See, e.g.*, *Taylor v. United States*, 238 F.2d 259, 261-62 (D.C. Cir. 1956) (holding that combination of pre- and post-indictment delay violated defendant's Sixth Amendment right to a speedy trial); *see United States v. Marion*, 404 U.S. 307, 321-22 (1971) (later distinguishing between pre- and post-indictment delay and holding that the former implicates due process, while the latter implicates the Sixth Amendment speedy trial protection).

In his supplement, White also asserted an additional argument that the passage of time had resulted in the loss or destruction of exculpatory or potentially useful evidence. Specifically, White urged the district court to infer from various circumstances that police investigators had interviewed one of his former roommates from around the time of the murder—whom he termed a "chief alibi witness"—and had failed to preserve evidence from that interview. White argued that the State had violated his due process rights by failing to provide him exculpatory evidence as required under *Brady v. Maryland*, 373 U.S. 83 (1963), or to preserve potentially favorable evidence, as required by *Arizona v. Youngblood*, 488 U.S. 51 (1988). White conceded, however, that "[i]t is impossible for the defense to show that the police department, in bad faith, intentionally destroyed or lost the evidence of the interviews with the alibi witness as would be required under the federal Youngblood analysis, nor can we specifically show that the information was exculpatory and was withheld under Brady." Nonetheless, White invoked the Due Course of Law clause of the

5

Texas Constitution and argued that it should be construed more expansively that its federal counterpart to require a balancing test in which prosecutorial bad faith was only one of several factors.

The district court took White's motion under advisement and considered it for over two years. In December 2006, White filed another affidavit from his investigator, who testified that an additional witness—a former roommate of the deceased and alleged suspect in the murder—had died in November 2006.

On December 31—during the waning hours of the presiding judge's last day in office[4]—the district court granted White's motion to quash or dismiss the indictment. In its order, the court purported to rely "on the grounds that under the provisions of the Texas and U.S. Constitutions the defendant is unable to obtain a fair trial due to delay and the death of innumerable necessary witnesses." On the same day and shortly after filing its signed order,[5] the district court sent the following email to counsel:

> Dear Counsel:
> I have given this matter considerable thought during the past couple of years. We have had extensive pretrial hearings, which have been supplemented with affidavits from the defense. I have had two law clerks prepare memos, in addition to the memos prepared by counsel. I must concede that I was leaning towards denying the motion but, when the SOT v. Reedy[6] case was reversed and rendered

---

[4] The longtime presiding judge of the 299th District Court, the Hon. Jon Wisser, did not seek reelection to serve the term of office beginning January 1, 2007. Judge Wisser was succeeded by the Hon. Charles Baird.

[5] The order was filed-stamped on December 31, 2006, at 4:00 p.m. The email indicated it was sent: "Date: 12/31/2006 5:08:55 PM."

[6] *Reedy v. State*, 214 S.W.3d 567 (Tex. App.—Austin 2007, pet. ref'd).

based on insufficient evidence, I thought I had best review all the material and think a little longer.  After re-reading US v. Marion,[7] US v. Lovasco,[8] and Taylor v. US,[9] I am not convinced that the current law supports the defense.  However, I do not believe the defendants in those cases presented as strong a case as Mr. White.  I have tried ancient murder cases and have observed how difficult it is for juries to ascertain the truth after an extensive passage of time even when the witnesses are still available.  At the proverbial "end of the day" I just do not believe that the defendant could have a fair trial with the death of so many of the witnesses.  I do not find that the State was in any way at fault in this matter.  Therefore, I reluctantly, and with much hesitation, grant the defense motion to quash the indictment based on my finding that under the 5th and 6th Amendments to the U.S. Constitution and their comparable provisions in the Texas Constitution.  I do realize that in doing this I may be doing something I dislike, which is making "new law."

I apologize for the delay in making this ruling but this is a most difficult case.

The State brings four points of error challenging the district court's order dismissing the indictment.  In its first point of error, the State asserts that the district court's order "was effectively an exercise of general authority not authorized by a particular constitutional provision, statute, or rule of common law" because the district court, in the State's view, did not specify any particular constitutional provisions whose violation it was purporting to remedy by dismissal.  The State emphasizes what it terms the "nonspecific language contained in the order" and that the district court did not respond to a "Motion Requesting Court to Give Grounds for Order" that the State filed following the order.  In this regard, the State also argues forcefully that the district court's email to counsel does not suffice as a statement of its grounds because "*[t]he trial court's email communication to counsel was not entered of record in this case and is not part of the official ruling*

---

[7] *United States v. Marion*, 404 U.S. 307 (1971).

[8] *United States v. Lovasco*, 431 U.S. 783 (1977).

[9] *Taylor v. United States*, 238 F.2d 259 (D.C. Cir. 1956).

7

*of the court*." (Emphasis in original). The State urges that "[a]llowing the trial court to dismiss an indictment under these circumstances forces the State to engage in guesswork to determine the legal basis for the dismissal and forces the State to present argument against any number of legal theories that could have been the basis for the trial court's ruling," thereby rendering its right of appeal "meaningless."

On the other hand, the State concedes that the district court was not required to enter conclusions of law—or findings of fact, for that matter—elaborating on the grounds for its ruling. *See Sovey v. State*, 628 S.W.2d 163, 165 (Tex. App.—Houston [14th Dist.] 1982, no pet.), which the State cites for the proposition that "in general, there is 'no statutory provision or other requirement of findings of fact and conclusions of law with regard to preliminary motions in criminal cases.'" Instead, the State argues only that the we should regard the district court's order as an exercise of general authority—that we should, in effect, presume that the order is not supported by any valid legal theory—because the order does not specify any particular constitutional ground on which it is based. This is the opposite of what our standard of review requires.

Contrary to the State's assertions, we are to uphold the district court's order if it is supported by the record and correct under any theory of law applicable to the case. *See, e.g.*, *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). This principle applies regardless of the extent to which the district court stated its legal grounds in its order or elsewhere, as we are to uphold the order on any legal theory applicable to the case even if the court purported to rely on an *erroneous* legal theory. *Armendariz v. State*, 123 S.W.3d at 404; *see also Herndon v. State*, 215 S.W.3d 901, 905

8

n.4 (Tex. Crim. App. 2007) (in appeal from granting of new trial, acknowledging "the general rule

. . . that a trial court's ruling will be upheld if it is correct on any applicable legal theory, even if

the court articulated an invalid basis. This is the 'right ruling, wrong reason' doctrine."). These

principles—and the related principle that we should imply fact findings supported by the evidence

in support of the order—can create some challenges for appellants seeking to challenge an order

where no explanation of specific grounds is provided, as the State observes.[10] In response to such

concerns, the Court of Criminal Appeals has required trial courts to prepare findings of fact and

conclusions of law in certain classes of cases.[11] However, to date, the Court of Criminal Appeals

has not imposed such a requirement for orders quashing or dismissing a charging instrument, nor

has the State preserved any complaint regarding the absence of such findings or conclusions here.

---

[10] White goes farther to suggest that the State waived its appellate complaints by failing to secure findings of fact and conclusions of law from the district court, adding that the State's "Motion Requesting Court to Give Grounds for Order" was not accompanied by a "certificate of presentment" to the district court. Although the absence of findings of fact and conclusions of law may create certain challenges for appellants under the standard of review, *see State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006) (suggesting that if the party with the burden of proof "loses in the trial court and the trial court makes no explicit fact findings, then this party should usually lose on appeal"), it is not a waiver of the right to appeal itself. *See State v. Cullen*, 195 S.W.3d 686, 699 (Tex. Crim. App. 2006) (emphasizing that non-prevailing party does not forfeit right to appeal denial of suppression motion by failing to request findings of fact and conclusions of law and that the absence of findings would impact only the standard of review).

[11] *See Cullen*, 195 S.W.3d at 698-99 (holding that trial courts must prepare findings of fact and conclusions of law regarding rulings on motions to suppress upon request of losing party to ensure "meaningful review" and that appellate courts are not "left in the unenviable position of having to make assumptions about the reasons for the trial court's decision."); *Gamble v. State*, 484 S.W.2d 713, 715-16 (Tex. Crim. App. 1972) (requiring trial courts to state findings and conclusions when revoking probation).

More to the point, there is no support for our easing the State's burden on appeal merely by inverting the presumptions in favor of the order's validity, as the State proposes. We overrule the State's first point of error.

In its other three points of error, the State, in the alternative, challenges four legal theories that, it acknowledges, could support the order. In its second point of error, the State challenges whether the evidence supports the theory that pre-indictment delay resulted in a deprivation of White's rights under the Due Process Clause of the Fifth and Fourteenth Amendments to the federal constitution. *See United States v. Lovasco*, 431 U.S. 783, 790-91 (1977); *Marion*, 404 U.S. at 325; *Ibarra v. State*, 11 S.W.3d 189, 193 (Tex. Crim. App. 1999). In its third point of error, the State attacks the theory that White's federal due process rights were violated by the failure to provide him exculpatory evidence as required under *Brady* or the failure to preserve potentially favorable evidence, as required by *Youngblood*. In its fourth point of error, the State disputes whether either of these legal theories find any greater support in the counterpart protections of the Texas Constitution. Regarding each of these grounds, the State, now assuming the district court's email to be part of the appellate record, portrays the district court's statement that "I do not find that the State was in any way at fault in this matter" as a factual determination that the court did not find it acted intentionally or with bad faith in delaying investigation or in failing to preserve any potential evidence. *See Youngblood*, 488 U.S. at 58 (requiring showing that State acted with bad faith in destroying potentially useful evidence); *Lovasco*, 431 U.S. at 790-91 (requiring showing that State delayed prosecution intentionally to gain tactical advantage); *Ibarra*, 11 S.W.3d at 193 (same).

During oral argument, the State also acknowledged another potential constitutional ground for the district court's order—the Sixth Amendment.[12] *See Barker v. Wingo*, 407 U.S. 514, 522 (1972)) (observing that dismissal is "the only possible remedy" for violation of defendant's Sixth Amendment right to a speedy trial). White's arguments before the district court regarding the implications of delay, as noted, referenced both the Due Process Clause and the Sixth Amendment, and he presented evidence of both pre- and post-indictment prejudice from the deaths of potential witnesses. *See Marion*, 404 U.S. at 321-22 (post-indictment delay implicates Sixth Amendment); *Dragoo v. State*, 96 S.W.3d 308, 316 (Tex. Crim. App. 2003) (citing *Barker*, 407 U.S. at 532)) (describing impairment of one's defense as the most serious type of prejudice evaluated under speedy trial analysis "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."). Furthermore, to the extent the district court's email is considered, we observe that the court cited to *Taylor v. United States*, which relied on both pre- and post-indictment delay in dismissing an indictment under the Sixth Amendment. *Taylor*, 238 F.2d at 261-62. Although the Sixth Amendment was among the constitutional grounds before the district court (and even while the State acknowledges that it was a possible basis for the order), the State has not challenged this ground beyond a single sentence in a post-submission brief: "To the extent the trial court based the dismissal of the indictment on the 6th Amendment, the Supreme Court has declined to extend the protections of that Amendment to pre-indictment delay." *See Marion*,

_____

[12] The district court also had before it evidence that Mr. White had been diagnosed with Amyotrophic Lateral Sclerosis (ALS, or Lou Gehrig's disease) in 1993, that his condition was progressively worsening, that the condition would inevitably be fatal, and that Mr. White had already outlived the average life expectancy for persons afflicted with the disease. Neither party has argued that this was a basis for the district court's ruling.

11

404 U.S. at 321-22. Although disputing whether *pre*-indictment delay can support dismissal of the indictment on Sixth Amendment grounds, the State has not challenged whether White's evidence of prejudice from *post*-indictment delay—which, as the State acknowledges, is relevant only to a Sixth Amendment violation, *see Marion*, 404 U.S. at 321-22—established a violation of that provision.

As this unchallenged ground could alone support dismissal, we affirm the district court's order. *See, e.g.*, *Gobell v. State*, 528 S.W.2d 223, 224 (Tex. Crim. App. 1975) (where unchallenged alternative ground for probation revocation supported order, points of error challenging other grounds "even if correct, would not show an abuse of discretion").[13] Alternatively, to the extent any of the State's arguments could somehow be construed as addressing this ground, we conclude such assertions are inadequately briefed and, therefore, are waived. Tex. R. App. P. 38.1(e), (f), (h); *see Busby v. State*, 253 S.W.3d 661, (Tex. Crim. App. 2008) ("This Court has no obligation to construct and compose appellant's issues, facts, and arguments 'with appropriate citations to authorities and to the record.'"). We need not reach the State's points of error challenging other grounds for the order.

---

[13] *Cf. Wortham v. Dow Chem. Co.*, 179 S.W.3d 189, 202-03 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (upholding summary judgment in civil case based on unchallenged grounds); *Holloway v. Starnes*, 840 S.W.2d 14, 23 (Tex. App.—Dallas 1992, writ denied) (regardless whether unchallenged summary-judgment ground was proper or improper, it supported the judgment).

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Affirmed

Filed:   December 18, 2008

Do Not Publish

13