**Clifton Robert DILLEHEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 472–90.**

Court of Criminal Appeals of Texas, En Banc.

June 19, 1991.

Rehearing Denied Sept. 18, 1991.

Tim K. Banner, Hal E. Turley, Dallas, for appellant.

John Vance, Dist. Atty., and Yolanda M. Joosten and Gregg Long, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

In this cause, appellant plead guilty to possession of cocaine and was placed on deferred adjudication pursuant to a plea bargain. The trial court placed appellant on probation for three years and fined appellant five hundred dollars. Art. 42.12, Sec. 3d(a), V.A.C.C.P. (see now Sec. 5(a)). Appellant requested and received permission from the trial court to appeal the trial court's order overruling his motion to suppress evidence (the cocaine). The Court of Appeals dismissed the appeal citing lack of jurisdiction to address an appeal from a deferred adjudication. *Dillehey v. State,* 788 S.W.2d 154 (Tex.App.—Dallas 1990).

The issue upon which we granted appellant's petition is whether or not a defendant can appeal from a deferred adjudica-

tion probation under the provisions of the article of the Texas Code of Criminal Procedure that authorizes the State's, not the defendant's, right to appeal. Specifically appellant, in an articulate, well reasoned brief seeks relief under the provisions of Article 44.01(j), V.A.C.C.P., which states:

> Nothing in this article is to interfere with the defendant's right to appeal under the procedures of Article 44.02 of this code. The defendant's right to appeal under 44.02 may be prosecuted by the defendant where the punishment assessed is in accordance with subsection (a), Section 3d, Article 42.12 of this code, as well as any other punishment assessed in compliance with art. 44.02 of this code.[1]

Upon initial examination of this sentence, the strict construction utilized by the court of appeals appears to be a fairly logical technical interpretation of the law, particularly regarding the interpretation of the commonplace legal phrase "assessment of punishment", as used in *Hernandez v. State*, 705 S.W.2d 700 (Tex.Cr.App.1986).

However, research into the legislative intent behind paragraph (j) leads us to a completely different result than that reached in the court of appeals.[2] The technical interpretation of paragraph (j), particularly the interpretation of the phrase "assessment of 'punishment' " advocated by the court of appeals, was simply not what the author of the bill or the author of paragraph (j), or for that matter, the legislature had in mind. We clearly see the intent of the legislature from the following excerpts from the Senate Floor discussions

on the constitutional amendment (SJR 34, 1987) allowing the State's right to appeal and the corresponding enabling legislation (specifically, paragraph (j)) (SB 762, 1987). The discussions are between Senator Montford, author of the bill, and Senator Washington, author of paragraph (j).

SJR 34, SECOND READING, SENATE FLOOR

WASHINGTON So other than that situation [a not guilty verdict] the State has an unlimited right of appeal?

MONTFORD Yes.

WASHINGTON All right. Now the defendant has the right to appeal only after conviction, is that right?

MONTFORD Yes.

WASHINGTON So the defendant has to be at risk before he or she has the right to appeal and complain to a higher court with respect to the manner in which the law has been interpreted by the District Court or the County Court at Law?

MONTFORD Yes.

WASHINGTON And this would give a right to the State that the defendant doesn't have.

MONTFORD That right is absolute in terms of the defendant. No, I don't think so. I think the defendant unequivocally has the right of appeal. Period. Unless he or she is found not guilty.

WASHINGTON Unless he received deferred adjudication.

1. Article 44.01(j) references to Article 42.12, Sec. 3d(a), V.A.C.C.P. That section was recodified and is now located in Article 42.12, Sec. 5(a). Acts. of June 15, 1989, ch. 785, Sec. 4.12, 1989 Tex.Sess.Law 3498. The recodification provides minor changes to this provision, none of which are pertinent to the issue raised herein. Article 44.01(j), referring to Art. 42.12, Sec. 3d(a), has not been amended to refer to the recodification. This may have been an oversight on the part of the legislature, see *Rose v. State*, 724 S.W.2d 832 at 838–839 (Tex.App.1986), affirmed 752 S.W.2d 529 (Tex.Cr.App.1987), but if so it is an unimportant one as far as disposition of this case is concerned since Tex.Gov't.Code Ann. § 311.027 provides that once a statutory provision is referenced, that reference applies to all recodifications of that provision. Or perhaps, in light of

this code provision, the legislature sees no need to amend to reflect the new codification.

2. We note that the Court of Appeals did no research into the legislative history of the bills that culminated in this amendment to the code of criminal procedure. Since it may not be necessary or appropriate to do such research in every case, we are not chiding the court of appeals here. However hindsight teaches us that this was an appropriate case in which to do so.

A legislative history can be researched at the state library on the second floor of the Capitol. Obtaining the legislative history can be accomplished by some or all of the steps illustrated in Appendix A.

MONTFORD *That's another instance and I indicated to you I would be willing to accept an amendment for clarity on the issue of deferred adjudication.*

WASHINGTON So the law is now that the defendant has to be at risk, that is, the defendant has to be convicted before he/she can complain of any procedural or substantive error committed by the trial court, is that right?

MONTFORD Yes.

*SB 762, SECOND READING, SENATE FLOOR Amendment (paragraph (j)), authored by Sen. Washington, is introduced and read.*

WASHINGTON Thank you, Mr. President. Mr. President, Members of the Senate. This amendment is acceptable to the author. It merely provides for the situation which I believe is *a hiatus in the law* right now. A person can appeal, as Senator Montford and I were discussing, if a person enters a plea of guilty or no contest and receives probation, and there has been a legitimate pretrial issue where they've discussed, where the court has ruled on the admissibility of some evidence or some other matter that either or both parties feels may have been dispositive of the case, *this would allow the person to appeal from a deferred adjudication probation the same as they can appeal from a regular probation.* The courts have interpreted provisions of the law now as to now allow a person to be able to appeal on a deferred adjudication where they can appeal from a regular probation and I think the amendment is acceptable.

MONTFORD Amendment is acceptable, Mr. President.

(Emphasis added).

The amendment was adopted *unanimously* viva voce vote (viva voce—"With the living voice....signifies voting by speech or outcry", *Blacks Law Dictionary*, West Publishing Co.). All senators were present and answered "yea" to the roll vote on paragraph (j) except for Sen. Truan, who was absent excused. They were aware of, because they were told face to face on the Senate floor, the specific purpose of the addition of Art. 44.01(j). SB 762 passed to engrossment as amended. The 3–day rule was suspended, 3rd reading of SB 762 took place—with no discussion, Bill 762 passed.[3]

The fundamental rule governing the construction of a statute is to ascertain the intent of the legislature in enacting the statute. *Patterson v. State*, 769 S.W.2d 938, 941 (Tex.Cr.App.1989) (most common rule of statutory construction is for judiciary to attempt to effectuate intent of legislature). Once determined, the intent of the legislature must be enforced by the courts even though it may not be entirely consistent with the strict letter of the statute. See *State v. Terrell*, 588 S.W.2d 784 (Tex.1979), *Ex Parte Groves*, 571 S.W.2d 888 (Tex.Cr.App.1978).

We have long honored, as binding evidence of legislative intent, bill analyses and study group reports and legislative council reports and floor debate. See *Studer v. State*, 799 S.W.2d 263 (Tex.Cr.App.1990). The intent of the legislature when enacting 44.01(j) is clear. The statute is susceptible to a construction that would effectuate the clear intent of the legislature. Where intent is clear, there is no room for further construction. *Patterson*, supra.[4] The leg-

---

**3.** We find no reasonable explanation as to why paragraph (j), authorizing a defendant's right to appeal from deferred adjudication probation, was placed in Article 44.01, V.A.C.C.P. rather than in 44.02, other than the probable theory that, at the time, 44.01 was the only legislative vehicle available for Senator Washington to get this provision into the Code. Such floor amendments are extremely common and account for a huge amount of the legislation passed in the legislature. They serve as an effective tool with which to bypass a slow or unfavorable committee and bring a matter to the immediate attention of the full legislative body.

**4.** We note that *Oliver v. State*, 808 S.W.2d 492 (Tex.Cr.App.1991) cited by the dissent as contrary authority, was a *plurality* opinion.

islature, without a single objection, nor any discussion on paragraph (j), clearly spelled out that it intended for defendants placed on deferred adjudication probation to be allowed, under Article 44.01(j), V.A.C.C.P., to immediately appeal rulings on pre-trial motions in compliance with Article 44.02.[5]

It is inherent in the duty of this Court to adhere to interpretations of the law consistent with the intent of the legislature. The court of appeals however, invoked the familiar "special controls over general" principle of statutory construction. See *Alejos v. State*, 555 S.W.2d 444 (Tex.Cr.App.1977) and Tex.Gov't.Code Ann. § 311.026 (Special Prevails Over General). Even in their analysis we believe they misapplied the doctrine. Article 42.12 is neither in conflict with or out of harmony with Art. 44.01(j). Put another way, there is nothing in Art. 42.12 for Art. 44.01(j) to "control", since Art. 42.12 does not by any of its wording prohibit or even deal with an appeal after one receives deferred adjudication. Article 42.12 deals with probation and 44.01(j) with appeals. If anything, Art. 44.01 is the special statute when it comes to what can be appealed, and Art. 42.12 is the special stat-

ute concerning probation. Thus neither *Alejos* nor § 311.026, supra, is implicated.

As previously stated, there can be no clearer declaration of legislative intent than we have in this case. Even without it though, Tex.Gov't.Code Ann. § 311.021 makes us presume that the legislature intended that the entirety of 44.01, including (j), be given effect.[6]

In sum, it was not through legislative enactment but through this Court's interpretation of the interplay between Articles 42.12 and 42.13 that the prohibition against appealing in deferred adjudication arose. *McDougal v. State*, 610 S.W.2d 509 (Tex. Cr.App.1981). This was the "hiatus in the law" Senator Washington *and* the full Senate *and* the House *and* the Governor did away with in 1987. Today we acknowledge that historical fact and hold that a defendant may appeal under 44.02 even though he has received deferred adjudication probation and has not been adjudicated guilty.[7]

The judgement dismissing the appellant's appeal is reversed, and this case is remanded to that court for proceedings not inconsistent with this opinion.

---

5. Granted, in structuring the wording of paragraph (j) the legislature has employed common language ("punishment assessed") which to the Court is also technical legal terminology, and apparently did so without considering its effect in the statute's interpretation/construction by the courts. Section 311.011, Tex.Gov't.Code Ann. tells us that:

(a) Words and phrases shall be read in context and construed according to the rules of grammar and common usage.

(b) Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.

Under this provision of the Code Construction Act, the court of appeals correctly construes the phrase "assessment of punishment", which has acquired a technical meaning. However, Section 311.003, Tex.Gov't.Code Ann. provides:

The rules provided in this chapter are not exclusive but are meant to describe and clarify common situations in order to guide the preparation and construction of codes.

6. Section 311.021 V.T.C.A. (Government Code—Intention in Enactment of Statutes) reads: In enacting a statute, it is presumed that:

(1) compliance with the constitutions of this state and the United States is intended;

(2) the entire statute is intended to be effective;

(3) a just and reasonable result is intended;

(4) a result feasible of execution is intended; and

(5) public interest is favored over any private interest

7. Finally we note the application of our holding to Art. 42.12 § 5(b)'s provision that after adjudication of guilt a defendant's appeal continues as if the adjudication of guilt had not been deferred. A defendant who has appealed, say, a motion to suppress after he received deferred adjudication, who seeks to appeal that same matter again after he is adjudicated guilty, may under the plain wording of the article be authorized to do so. That question is not before us in this case. However, because of the "law of the case" doctrine such appeal would not be duplicitous. *Ware v. State*, 736 S.W.2d 700 (Tex.Cr. App.1987); *Granviel v. State*, 723 S.W.2d 141 (Tex.Cr.App.1986) (When the facts and legal issues in a case on appeal are virtually identical with those in a previous appeal in which the legal issues were resolved, the determinations made in that previous appeal govern in the current appeal and no further reasoning other than a recitation to that effect need be made).

## APPENDIX A

### COMPILING TEXAS LEGISLATIVE HISTORY

at the Legislative Reference Library

State Capitol—Austin, Texas

Unlike U.S. legislation, Texas legislative history is not written and must be compiled by the researcher. The following steps should be taken by the researcher;

1. Determine the bill number and the session which enacted the bill.
2. Examine the original bill file.
3. Listen to the tape recordings of the public hearings of committee meetings and debate in the House and Senate.
4. Examine other documents which may be helpful.

Please note that the numbering of the House and Senate bills begins over again during each legislative session.

The bill number is assigned based on whether the bill was introduced in the House or the Senate.

The bill number does not change during the session.

### 1. DETERMINE THE BILL NUMBER AND THE SESSION WHICH ENACTED THE BILL

A. Locate the desired section or article of the law (the statute) in Vernon's Annotated Texas Statutes (for criminal law, you can check for the section or article at the end of each section of the Penal Code or the end of each article in the Code of Criminal Procedure).

B. The end of the statute has a history note which lists all the changes made to the statute. Locate the citation to the General and Special Laws of Texas (referred to as the session laws).

*Example:* Acts 1977, 65th Leg., p. 2411, ch. 571

C. SESSION LAWS—(General and Special Laws of Texas). The session laws are the full text of the final (enrolled) version of all of the bills passed by the Legislature in the order they are signed by the Governor. The bills are called acts and are numbered by chapters.

Locate the bill in the session laws by using the citation from the statute to find the volume for the legislative session, the chapter, and/or the page number.

*Example:* The session laws for 1977, from the 65th Legislature, page 2411, chapter 571.

Look up the chapter in the session laws, and the bill number is shown directly under the chapter number.

*Example:* Chapter 571

H.B. 2455

Note the House bill number or Senate bill number and the session number.

*Examples:* House Bill 2455, 65th Session

Senate Bill 387, 69th First Called Session

### 2. EXAMINE THE ORIGINAL BILL FILE

A. The bill file typically contains the various versions of the bill, the bill analysis, and the fiscal note. Versions of the bill may include the introduced, committee, engrossed, and the final (enrolled) version.

B. The bill analysis is a brief document which gives a short explanation of the bill, and a summary of each section of the bill. The bill analysis is prepared for the committee version of the bill, not the final version of the bill.

C. The Legislative Reference Library has the bill files on microfilm for bills from the 63rd session (1973) to the present. Request assistance in locating the microfilmed bill file from a librarian. You may make photocopies from the bill file.

D. Microfilmed copies of the original bill files for bills from the 63rd (1973) through the 70th (1987) sessions are also available at the Dallas Public Library, (214) 670–1468, and at the Houston Public Library, (713) 236–1313, ask for the Texas Room.

E. Bill files dating before 1973 are located in the Archives Division of the State Library (Lorenzo de Zavala Bldg., 12th and Brazos, Austin (512) 463-5480). Bill analyses were *sometimes* prepared for bills dating before 1973.

3. **LISTEN TO THE TAPE RECORDINGS OF THE PUBLIC HEARINGS OF COMMITTEE MEETING AND DEBATE IN THE HOUSE AND SENATE**

A. Beginning with the 63rd session (1973), the Legislature began tape recording the public hearings held by committees, and the debate in the House or the Senate. (Formal meetings are also *sometimes* taped at the committee chairman's request). In order to listen to the tapes, you will need the dates of these hearings and debates.

B. Locate the bill's history in the House Bill History volume or the Senate Bill History volume for each session. Note whether the committee is from the House or the Senate (indicated by H or S), the name of the committee, and the date(s) of any public hearing or formal meetings held by that committee. Note the dates of the second and third reading (which is when any debate may have taken place) in both the House and the Senate.

C. You may go to the buildings shown below to listen to the tapes, or you may order copies (prepaid unless you are a State agency) of the tapes.

House tapes, 1973–present (512) 463-0489

House Committee Coordinator (Room 110, Reagan Building, 14th & Congress)

Senate tapes, 1973–1976 (512) 463-5480

Archives Division of the Texas State Library (Room 100, Zavala Building, 12th and Brazos)

Senate tapes, 1977–present (512) 463-0430

Senate Staff Services (Room 206, 14th and Trinity)

(The time it takes to get your tapes depends on how busy the staff is at that time. Generally, if the Legislature is out of session, it takes only a week, however, waits of up to two months (for Senate tapes) are not unheard of.)

D. The bill history for bills dating before 1973 is given only in the House and Senate Journals for each session. There is a bill history index in the last volume of each of the Journals for each session. No tape recordings are available. Very little information is available for these bills. There may have been an interim study for major legislation.

4. **EXAMINE OTHER DOCUMENTS WHICH MAY BE HELPFUL**

A. Legislative Interim Committee Reports

Any reports or studies which may have been made by any standing or special legislative committees during the time period between sessions (the interim) are listed in the card catalog of the Legislative Reference Library. These reports are listed in the card catalog by chairman, title, and subject.

B. House Research Organization (HRO) Bill Analysis

(1) Beginning with the 65th session (1977), the HRO began preparing bill analyses for *some* bills when the bill reached the 2nd reading in the House. The bill analyses are compiled in Daily Floor Reports.

(2) Locate the bill analysis by noting the date of the 2nd reading in the House, which is given in the bill history. Beginning with the 67th session (1981), the last volume of the Reports also has an index giving the date of the bill analysis.

(3) Then locate the bill analysis in the Daily Floor Report on the date indicated. You may photocopy the bill analysis. Some courts have accepted the HRO bill analysis for proving intent.

(4) The Daily Floor Reports are located on the mezzanine in the Documents section of the Legislative Reference Library, call number:

L 1801.9
St 94/(number of the session) d (date of the 2nd reading in the House)

C. Publications from state agencies and commissions

Agency publications often discuss needed changes in law that affect agency operations. A commission may be created to research a particular problem for the Legislature. These publications are listed in the card catalog by name of the agency or commission, title, and subject.

Some publications are also listed in the card catalog by the legislative session and bill number.

*Example:* Texas. Legislature, 65th. Senate bill 72.

It is a good idea to cross-reference as much as you can. You should cross-reference your bill in the following reference volumes, reports and microfilm to see if you've missed anything. All of the following can be found at the Legislative Reference Library in the Capitol.

1. Senate Bill History (this is the name of a book)
2. House Bill History (″)
3. Bills by Committee (″)
4. Index to Sections Affected (″)
5. Author/Sponsor Index to Bills (″)
6. Detailed Subject Index to Bills (″)
7. House and Senate Journals (″)
8. Bill microfilm
9. HRO Bill Analysis (Daily Floor Reports)
10. Interim Committee Reports

If you get confused or lost in the paper jungle, the librarians are extremely helpful—just ask, they'll point the way.

## BIBLIOGRAPHY

1. Allison, Malinda. *Texas Legislative History: A Manual of Sources,* Legislative Reference Library, 1980.

2. Allison, Malinda, and Hambleton, James. "Research in Texas Legislative History." *Texas Bar Journal,* Mar.1984, pp. 314–317.

3. Gruben, Karl T. and Hambleton, James E., ed. *Reference Guide to Texas Law and Legal History,* 2nd ed., Austin, Texas. Butterworth Legal Publishers, 1987.

4. Texas Legislative Council. *Guide to Legislative Information.* Report 88–3. Nov.1988. (Library call number: L 1400.7 In88–3)

The legislative history information guide in this appendix was provided by the Legislative Reference Library, State Capitol Building, Austin, Texas.

BAIRD, Judge, dissenting.

Finding myself in disagreement with a majority of this honorable Court, I respectfully dissent.

### I.

We granted appellant's petition for discretionary review wherein appellant argues that Tex.Code Crim.Proc.Ann. art. 44.01(j), specifically that portion referring to deferred adjudication (art. 42.12 § 3d(a) [henceforth 42.12 § 5(a)]), now permits a defendant to appeal from an order deferring adjudication of guilt. The majority frames the issue as follows: "whether or not a defendant can appeal from a deferred adjudication probation under the provisions of the article of the Texas Code of Criminal Procedure that authorizes the *State's, not the defendant's,* right to appeal." [1] *Dillehey v. State,* —— S.W.2d ——, Slip op. at 1 (Tex.Cr.App. No: 472-90, delivered this day). The majority is persuaded by appellant's argument; however, for the following reasons, I am not convinced that art. 44.01(j) permits such an appeal.

### II.

Article 44.01(j) states:

1. All emphasis herein is supplied unless otherwise noted.

Nothing in this article is to interfere with the defendant's right to appeal under the procedures of Article 44.02 of this code. The defendant's right to appeal under 44.02 may be prosecuted by the defendant where the *punishment assessed* is in accordance with subsection (a), Section 3d, Article 44.12 of this code, as well as any other punishment assessed in compliance with art. 44.02 of this code.

Article 44.02 provides:

A defendant in any criminal action has the right of appeal under the rules hereinafter prescribed, provided, however, before the defendant who has been *convicted* upon either his plea of guilty or plea of nolo contendere before the court and the court, upon the election of the defendant, assesses punishment and the punishment does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney may prosecute his appeal, he must have permission of the trial court, except on those matters which have been raised by written motion filed prior to trial. This article in no way affects appeals pursuant to Article 44.17 of this chapter. (Emphasis added.)

I believe the issue is whether that portion of art. 44.01(j), referring to the *"punishment assessed"* in accordance with 42.12 § 5(a), allows a defendant to appeal from an order deferring adjudication of guilt where the defendant has not first moved for final adjudication pursuant to art. 42.12 § 5(a), thereby receiving the conviction necessary under art. 44.02. Stated another way, does art. 44.01(j) permit an appeal where a defendant has *not* moved for final adjudication of punishment as provided in art. 42.12 § 5(a)?

### III.

To resolve the issue we must determine the meaning of that portion of art. 44.01(j) which provides in part: "The defendant's right to appeal under 44.02 may be prosecuted by the defendant where the *punishment assessed* is in accordance with [art. 42.12 § 5(a)] of this code." Such a deter-

mination depends upon the method of statutory construction employed. The majority assigns great weight to the comments on the Senate floor prior to the vote on Senator Washington's amendment and ceases its analysis. However, while I feel that Senator Washington's comments are important, I do not believe they are dispositive.

When construing a statute, a court should consider the following seven factors enumerated by Tex.Gov't Code Ann. § 311.-023:

### 1. *The object sought to be obtained.*

Clearly the object sought by the constitutional amendment (see infra at 3) and art. 44.01 generally was to provide the *State* with the right to appeal. I agree with the Court of Appeals conclusion regarding the objective of art. 44.01(j):

Article 44.01(j) simply means that where the defendant otherwise has the right to appeal, article 44.01 does not interfere. *We conclude that there has been no substantive change concerning the defendant's right to appeal.*

*Dillehey v. State,* 788 S.W.2d 154, 155 (Tex.App.—Dallas 1990).

### 2. *The circumstances under which the statute was enacted.*

The voters of our State passed a constitutional amendment giving the *State* the right to appeal. That amendment, found at Art. 5, § 26 of the Texas Constitution, provides as follows: "The *State* is entitled to appeal in criminal cases, as authorized by general law." On November 3, 1987, the effective date of the amendment, art. 44.01 took effect. Article 44.01, which generally states the circumstances in which the State is entitled to appeal, became effective contingent upon the voters passing the constitutional amendment.

### 3. *The legislative history.*

Contrary to the majority's position, the legislative history is not dispositive of an appellate court's construction of a statute. See *Oliver v. State,* 808 S.W.2d 492 (Tex. Cr.App.1991); Tex.Gov't Code Ann.

§§ 311.023 and 311.026. Therefore, while the comments of Senator Washington, duly noted by the majority, are important, I do not feel that they are controlling.

Additionally, it is important to note that the Court of Appeals rendered its decision in this case on *March 23, 1990*. The opinion in another case which reached the same results, *Hosea v. State*, 802 S.W.2d 763 (Tex.App.—Houston [14th Dist.] 1990), was handed down on *November 29, 1990*. Therefore, the only cases to interpret art. 44.01(j) expressly held that art. 44.01(j) did *not* provide a defendant with the right to appeal from an order deferring adjudication of guilt. Surely the 72nd Legislature, which convened on *January 8, 1991*, was aware of both the decision of the Court of Appeals in this case and that of the 14th Court of Appeals in *Hosea*. However, no legislation was introduced or passed that affected the interpretation of art. 44.01(j). Because no action was taken by the Legislature, I believe it is safe to assume that the Legislature was satisfied that art. 44.-01(j) was being afforded its full legislative intent.

> 4. *The common law or former statutory provisions, including laws on the same or similar subjects.*

Prior to the enactment of art. 44.01(j), a defendant could not appeal from an order deferring adjudication of guilt because an order deferring adjudication did not constitute punishment; procedures for assessing punishment applied only after a finding of guilt. *Ex parte Hernandez*, 705 S.W.2d 700, 702 (Tex.Cr.App.1986); *Richardson v. State*, 617 S.W.2d 267 (Tex.Cr.App.1981). Therefore, prior to the enactment of art. 44.01(j), if a defendant was dissatisfied with the decision to defer adjudication the proper remedy was to move for final adjudication as provided in art. 42.12 § 5(a), and pursue an appeal pursuant to 42.12 § 5(b). *McDougal v. State*, 610 S.W.2d 509 (Tex. Cr.App.1981). In other words, appellate remedies were available only after an adjudication of guilt because a conviction, as

required by art. 44.02, necessarily requires an adjudication of guilt. *McNew v. State*, 608 S.W.2d 166, 172 (Tex.Cr.App.1978) (opinion on original submission); *Ex parte Shillings*, 641 S.W.2d 538 (Tex.Cr.App. 1982).

Article 42.12 § 5(*a*) provides the authority for deferring adjudication of guilt upon a plea of guilty or nolo contendere. A defendant, however, may request final adjudication within thirty days after entering the plea and the deferment of adjudication. After such request, "the court shall proceed to final adjudication as in all other cases." Article 42.12 § 5(*b*) provides in part: "After an adjudication of guilt, all proceedings, including assessment of punishment, pronouncement of sentence, granting of probation, and *defendant's* appeal continue as if the adjudication of guilt had not been deferred."

Consequently, I believe the "punishment assessed" portion of art. 44.01(j) means that a defendant must first ask the court to proceed to final adjudication before being permitted to appeal. This is consistent with art. 44.02 which requires a conviction in order to prosecute an appeal and it is consistent with prior holdings that an order deferring adjudication is not considered punishment.[2] As the Court of Appeals held, "only once there has been a final adjudication of guilt can the defendant appeal because only then has there been an assessment of 'punishment.'" *Dillehey*, 788 S.W.2d at 155. Therefore, I believe that portion of art. 44.01(j) providing for an appeal where the punishment is assessed in accordance with art. 42.12 § 5(a) requires that the defendant first move for adjudication of guilt.

> 5. *The consequences of a particular construction*
>
> *and*
>
> 6. *The administrative construction of the statute.*

If a general provision conflicts with a special or local provision, the provisions

---

**2.** While a deferred adjudication defendant is required to fulfill the terms and conditions of probation, such is not considered a "punish-

ment" for purposes of appeal because there has not been a final adjudication of guilt. See *Ex parte Hernandez*, 705 S.W.2d at 702.

shall be construed, if possible, so that effect is given to both. Tex.Gov't Code Ann. § 311.026. This rule of construction is consistent with the common law doctrine of in pari materia, which provides for harmonizing statutes which relate to the same person or thing, or to the same class of persons or thing, or which have a common purpose. This Court addressed the interplay between different statutes covering similar criminal acts in *Alejos v. State*, 555 S.W.2d 444 (Tex.Cr.App.1977) (op. on reh'g.). Therein we noted the following:

> It is a settled rule of statutory interpretation that statutes that deal with the same general subject, have the same general purpose, or relate to the same person or thing or class of persons or things, are considered as being in pari materia though they contain no reference to one another, and though they were passed at different times or at different sessions of the legislature.

> In order to arrive at a proper construction of a statute, and determine the exact legislative intent, all acts and parts of acts in pari materia will, therefore, be taken, read and construed together, each enactment in reference to the other, as though they were parts of one and the same law. Any conflict between their provisions will be harmonized, if possible, and effect will be given to all the provisions of each act if they can be made to stand together and have concurrent efficacy ... But where a general statute and a more detailed enactment are in conflict, the latter will prevail, regardless of whether it was passed prior or subsequently to the general statute, unless it appears that the legislature intended to make the general act controlling.

*Id.,* 555 S.W.2d at 450, citing 53 Tex.Jur.2d, Statutes, § 186, p. 280.

The Court of Appeals correctly noted that art. 42.12 is a specific provision dealing with adult probation and deferred adjudication. *Dillehey,* 788 S.W.2d at 155. Additionally, art. 44.02 which requires a conviction is a specific statute limited to a defendant's right to appeal. On the other hand, art. 44.01 focuses on the *State's* right

to appeal. Subsection (j) is the only part of art. 44.01 which refers to a defendant's right to appeal, and that reference is made in only general terms.

Clearly, a special statute controls over a general statute. *Alejos,* 555 S.W.2d at 449. To permit otherwise would negate the purpose of the special statute. However, we should first attempt to harmonize and give effect to every statute addressing the same material, whether general or specific. *Id.;* Tex.Gov't Code Ann. § 311.026. Here, as previously stated, the Court of Appeals properly interpreted art. 44.01(j) in a manner to give effect to all three provisions:

> Article 44.01(j) simply means that where the defendant otherwise has the right to appeal, article 44.01 does not interfere. *We conclude that there has been no substantive change concerning the defendant's right to appeal.*

*Dillehey,* 788 S.W.2d at 155 (emphasis added).

The Court of Appeals concluded that art. 44.01(j) "was written to emphasize that the State's right to appeal does not affect the appellate rights of the defendant." *Dillehey,* 788 S.W.2d at 155.

The majority misconstrues art. 44.01(j) in such a manner as to undermine the provisions of art. 42.12 § 5(a), and in doing so renders meaningless § 5(b)'s provision permitting an appeal after final adjudication of guilt "as if the adjudication of guilt had not been deferred."

### 7. *The title (caption), preamble, and emergency provision.*

Article 44.01 is entitled: "Appeal by *state.*" There is no mention of conferring upon a defendant the right to appeal from an order deferring an adjudication of guilt.

### IV.

The majority commends appellant for his articulate and well-reasoned brief. I agree. I also compliment the State for its brief and oral argument in this cause. However, I am particularly impressed with the opinion of the Court of Appeals. I find its interpretation of art. 44.01(j) noteworthy in

at least three respects. First, it harmonizes and gives effect to art. 44.02, art. 42.12 §§ 5(a) and (b) and art. 44.01(j), as required by Tex.Gov't Code Ann. § 311.026. Second, it is compatible with prior case law. *Hernandez*, 705 S.W.2d 700. Third, it is consistent with the only other published appellate court decision addressing the merits of this issue. See, *Hosea v. State*, 802 S.W.2d 763 (Tex.App.—Houston [14th Dist.] 1990).[3]

## V.

I believe that we are duty bound to consider more than the floor debate on SJR 34 and SB 762 in order to discharge our obligation under § 311.023. For the foregoing reasons, I would hold that art. 44.01(j) does not substantively change a defendant's right to appeal; specifically, it does not alter the requirement of a conviction pursuant to art. 44.02 or the appellate procedure set forth in art. 42.12 § 5(a). Since appellant failed to move for final adjudication of guilt, I believe the Court of Appeals correctly concluded it was without jurisdiction to entertain the appeal. *Dillehey*, 788 S.W.2d at 155. Accordingly, I would affirm the judgment of the Court of Appeals. Because the majority does not, I respectfully lodge this dissent.

McCORMICK, P.J., and CAMPBELL and WHITE, JJ., join this opinion.

---

**3.** In dicta, however, the Court of Appeals for the First District opined that art. 44.01(j) provided the right to appeal an order deferring adjudication. *Kite v. State*, 788 S.W.2d 403, 404 n. 1 (Tex.App.—Houston [1st Dist.] 1990 no. pet.). Specifically, the Court of Appeals held, "There is a lurking significant criminal law issue in this case that needs to be discussed, namely, that the law has changed to allow a defendant on deferred adjudication to appeal ... There is a little noticed provision in article 44.01 that changed prior case law and, for the first time, allowed a defendant who gets deferred adjudication to appeal." *Id.*