**Charles Richard AYCOCK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–90–00638–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

April 2, 1992.

Peter Adams, Houston, for appellant.

Carol M. Cameron, Houston, for appellee.

Before PAUL PRESSLER, JUNELL and ELLIS, JJ.

## OPINION ON REMAND

PAUL PRESSLER, Justice.

Appellant was charged with the felony offense of possession of a controlled substance, cocaine, in an amount less than 28 grams. TEX.HEALTH & SAFETY CODE ANN. § 481.115(b). After the trial court denied his motion to suppress, appellant entered a plea of guilty pursuant to a plea bargain agreement and was placed on deferred adjudication probation for a period of seven years. In an unpublished opinion, this court ordered the appeal dismissed, stating that an appellate court has no jurisdiction to review such orders when there has been no final determination of guilt and no punishment assessed. The Court of Criminal Appeals summarily granted appellant's petition for discretionary review and remanded the cause for reconsideration, 817 S.W.2d 64, noting that since the prior opinion of this court and since appellant's petition had been filed, the Court of Criminal Appeals had ruled in *Dillehey v. State*, 815

S.W.2d 623 (Tex.Crim.App.1991), that a defendant may appeal from a deferred adjudication probation. On the basis of *Dillehey*, this court is now able to entertain the appeal. The decision of the trial court denying appellant's motion to suppress is affirmed.

■■■ In his sole point of error, appellant contends that the trial court improperly denied his motion to suppress evidence since he was arrested and searched without a warrant and without his consent. The trial judge is the sole trier of fact on a pretrial motion to suppress, and absent a showing that he abused his discretion, his ruling will not be disturbed. *Freeman v. State*, 723 S.W.2d 727, 729 (Tex.Crim.App. 1986); *Carrasco v. State*, 712 S.W.2d 120, 122 (Tex.Crim.App.1986). On appellate review, the evidence adduced at the suppression hearing is viewed in the light most favorable to the trial judge's ruling. *Daniels v. State*, 718 S.W.2d 702, 704 (Tex. Crim.App.1986); *overruled on other grounds*, 758 S.W.2d 772 (Tex.Crim.App. 1988). The facts as stipulated by both parties and included in the transcript are as follows:

> During the examination and border search of passengers and baggage bound for Belize from Houston Intercontinental Airport, one bag "alerted on" by U.S. Customs Officer Brown and his dog "Ace" prompted Brown to alert Senior Inspector Soule of the U.S. Customs Service as to the bag's suspiciousness. The bag had a tag indicating that it was being exported from the U.S. to Belize on TACA flight # 411, scheduled to depart at 1330 hours local time on 11/21/89. The bag also had a name tag which indicated that the bag had been checked with TACA Airlines by a Charles Aycock, 1426 Bamboo, Galveston, Texas. The bag also had a destination tag to Belize with serial # 25–91–02. Mr. Aycock was called over the P.A. system in the departure area of TACA (gate 6). A white male approached the counter agent of TACA Airlines and identified himself as Charles Aycock. The suspect at this time was escorted to the U.S. Customs facility in Terminal B of the airport where he was searched by a U.S. Customs Officer and was found to have in his possession baggage claim tag # 25–91–02, which corresponded to the bag tag on the bag that was the subject of the canine alert. Inspection of the bag by Senior Inspector Soule disclosed a shaving kit which contained a pill bottle with Charles Aycock's name on the prescription label. The bottle was opened and was found to contain 14 penicillin tablets and some unidentified orange pills. The bottle was opened, and a small plastic bag with a white-colored rocky substance was found inside. The substance was field-tested by Inspector May of the U.S. Customs Service and a positive result for cocaine was obtained. The suspect was arrested and the bag in question and the attendant baggage tags were seized as evidence.

> It is further stipulated that the physical evidence that would be offered by the state in a trial of this case would be the bag mentioned above (the luggage), its contents, and the baggage tags.

> It is further stipulated that there was no consent given for the search of the defendant or his luggage, nor was there an application made for a search warrant. Also, there was no arrest warrant.

The State argues that this court cannot properly consider appellant's point of error without a statement of facts from the hearing on the motion to suppress. This is not correct. Tex.R.App.P. 50(c) provides as follows:

> The parties may agree upon a brief statement of the case and of the facts proven as will enable the appellate court to determine whether there is error in the judgment. Such statement shall be copied into the transcript in lieu of the proceedings themselves.

As quoted in its entirety above, stipulated facts were signed by both parties and included in the transcript. This court may consider these stipulations in lieu of a statement of facts to determine whether the trial court abused its discretion in denying appellant's motion to suppress.

The thrust of appellant's complaint is that once his luggage had been "alerted on" in the "sniff search," a warrant should have been obtained prior to any further action on the part of the authorities. Because a warrant was neither sought nor obtained and the State did not request or receive appellant's consent, he claims that the subsequent search of his luggage and person and his arrest were in violation of his statutory and constitutional rights, specifically under TEX.CODE CRIM.PROC.ANN. art. 1.06, TEX.CODE CRIM.PROC.ANN. art. 38.-23, and TEX. CONST. art. I, sec. 9.

The basic purpose of both the Fourth Amendment of the United States Constitution and article I, sec. 9 of the Texas Constitution is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. *Juarez v. State,* 758 S.W.2d 772, 775 (Tex.Crim. App.1988). Searches conducted without a warrant issued upon probable cause are *"per se* unreasonable," subject to a few specific exceptions. *Id.*

■ A dog's "alert" is sufficient to create probable cause to conduct a warrantless search. *United States v. Dovali–Avila,* 895 F.2d 206, 207 (5th Cir.1990). It has been held that the "alert" creates probable cause sufficient to allow police detention up to and including actual arrest. *Walsh v. State,* 743 S.W.2d 687, 689 (Tex.App.— Houston [1st Dist.] 1987, no pet.). Once the dog "alerted on" appellant's luggage, the authorities had probable cause to detain and search the luggage without a warrant.

If the authorities had searched the luggage before searching appellant's person, they would have had probable cause to arrest him on the basis of the cocaine found inside the luggage, and they could have then properly searched appellant incident to his arrest. However, the stipulated facts indicate that the search of appellant's person occurred prior to the search of the luggage. Because of this the State cannot justify the search of appellant as a search incident to arrest.

■ The only evidence discovered as a result of the search of appellant's person, and, thus, the only evidence in connection with this search that appellant asked the trial court to suppress, was the baggage claim tag connecting appellant to the seized luggage. The facts show that the luggage itself had a name tag on it which showed that it had been checked with the airlines by a Charles Aycock. When this name was called over the airline's P.A. system, appellant appeared and identified himself as Charles Aycock. This response to the P.A. announcement was sufficient to connect appellant to the luggage without the need of the baggage claim tag which was found on appellant's person. Thus, any error in failing to suppress the claim tag was harmless.

■ Even if this were not so, it has been held that "the Fourth Amendment's balance of reasonableness is qualitatively different at the international border than in the interior." *United States v. Montoya de Hernandez,* 473 U.S. 531, 538, 105 S.Ct. 3304, 3309, 87 L.Ed.2d 381 (1985). "[S]earches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." *United States v. Ramsey,* 431 U.S. 606, 616, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1972). A United States airport that serves as the destination or point of departure for a nonstop flight from or to a foreign location has been held to be the functional equivalent of an international border under the "border search" doctrine. *United States v. Sheikh,* 654 F.2d 1057, 1069 (5th Cir.1981).

The Fifth Circuit Court of Appeals has construed the rationale applied to border searches under the Fourth Amendment to allow customs agents to make warrantless searches of people entering the country without reasonable suspicion, provided that those searches are routine. *See, e.g., United States v. Oyarzun,* 760 F.2d 570 5th Cir.1985). The court recently extended this rationale to persons exiting the country, noting that policy considerations for applying the border search principle applies equally to the outgoing and incoming trav-

eler. *United States v. Berisha*, 925 F.2d 791, 795 (5th Cir.1991).

The court in *Berisha* expressly limited its holding to the facts of its case which was a routine, suspicionless search for exportation of domestic currency. The facts in the present case, however, lend themselves to a similar analysis. Here, the customs officials were conducting a routine narcotics search, rather than a search for currency, but there is a substantial national interest involved in both cases. The purpose of conducting routine currency searches is to prevent the currency from evading domestic criminal, tax, and regulatory laws. *Berisha*, 925 F.2d at 795. The purpose of conducting narcotics searches is to curb the exporting and importing of controlled substances. In both cases, the government is interested in protecting some interest of United States citizens. Also, the fact that there is a likelihood of smuggling attempts at the border should put the traveler on notice that his or her privacy may be invaded when he crosses the border. *Id.*

Under the above rationale, even if the nonsuppression of the baggage claim tag was not found to be harmless, the search of appellant's person after his luggage had been "alerted on" and after appellant had identified himself with the name on the luggage was not unreasonable. The customs officials already had probable cause to search the luggage, appellant was detained for a brief period of time, and the search itself did not go beyond the scope of a routine customs search and inspection. For these reasons, the trial court did not abuse its discretion in denying appellant's motion to suppress.

The ruling of the trial court is affirmed.