**Muhammad Faleh Abu JAROUR,
Appellant,**

v.

**The STATE of Texas, State.**

No. 2–95–026–CR.

Court of Appeals of Texas,
Fort Worth.

May 16, 1996.

---

Danny D. Burns, Fort Worth, for Appellant (on appeal only).

Tim Curry, Criminal District Attorney, Betty Marshall and Charles M. Mallin, Assistant Briefs of the Appellate Section, and Helena F. Faulkner and Jamie Cummings, Assistants, Fort Worth, for Appellee.

Before CAYCE, C.J., and LIVINGSTON and DAUPHINOT, JJ.

**1.** Probation is now called community supervision. TEX.CODE CRIM.PROC.ANN. art. 42.12 (Vernon

## OPINION

CAYCE, Chief Justice.

Appellant Muhammad Faleh Abu Jarour was charged with theft of property valued at $750 or more but less than $20,000. Upon his plea of guilty, the trial court deferred adjudication and placed him on probation for a period of two years. Before the end of the probationary term, the State moved to adjudicate Jarour's guilt, alleging that he had failed on several occasions to report to his probation officer as required by the conditions of his probation. At the adjudication hearing, Jarour pleaded true to the allegation of failure to report. The trial court found him guilty of theft and sentenced him to two years in prison.

In his sole point of error, Jarour complains that he was denied the right to confront the witnesses against him at the adjudication hearing because the trial court failed to sua sponte appoint an Arabic interpreter for him. For the reasons stated below, we are jurisdictionally barred from addressing the merits of this complaint.

Article 42.12 of the Texas Code of Criminal Procedure. controls questions concerning adult probation and applications to revoke probation.[1] Section 5(b) of article 42.12 specifically states that "[n]o appeal may be taken" from the trial court's determination to adjudicate an original offense upon violation of probation. TEX.CODE CRIM.PROC.ANN. art. 42.12, § 5(b) (Vernon Supp.1996); *Phynes v. State,* 828 S.W.2d 1, 2 (Tex.Crim.App.1992); *Russell v. State,* 702 S.W.2d 617, 618 (Tex. Crim.App.1985), *cert. denied,* 479 U.S. 885, 107 S.Ct. 277, 93 L.Ed.2d 253 (1986). "This clearly and emphatically denies this Court any jurisdiction to entertain or consider an appeal from the adjudication hearing *on any grounds." Johnson v. State,* 694 S.W.2d 227, 228 (Tex.App.—Fort Worth 1985, pet. ref'd). Under these circumstances, the appropriate resolution of such an appeal is to dismiss the appeal for want of jurisdiction. *Phynes,* 828 S.W.2d at 2; *Johnson,* 694 S.W.2d at 228.

Supp.1996).

Without reviewing Jarour's claim that he was denied confrontation of the witnesses against him, we dismiss his appeal for lack of jurisdiction.

DAUPHINOT, J., files a concurring opinion.

DAUPHINOT, Justice, concurring.

In the case before us, the majority holds that we do not have jurisdiction to review Jarour's contention that he was denied his constitutional right to confront the witnesses against him at the adjudication hearing. As I understand current law, I am constrained to concur.

Article 42.12, section 5(b) has created a veritable Gordian Knot for the intermediate appellate courts.[1] It provides that a defendant is entitled to a hearing limited to the determination by the court of whether to proceed to an adjudication of guilt on the original charge. Yet, it further provides that no appeal may be taken from this determination.

Section 5(b) also establishes that the defendant may be arrested and detained as provided in section 21 of article 42.12.[2] Section 21 states that a warrant may issue for violation of any of the conditions of community supervision.[3] After a hearing, the judge may either continue, extend, modify, or revoke community supervision.[4] Section 21 presupposes the filing of a motion alleging violations of the conditions of community supervision.

The United States Supreme Court has enunciated the minimum requirements of due process that must be observed in probation revocation hearings. They include: written notice of the claimed violations of probation, disclosure to the probationer of the evidence against him, the opportunity to be heard in person, and by counsel, and to present witnesses, the right to confront and cross-examine adverse witnesses, a "neutral and detached" hearing body, and a written statement by the fact finder as to the evidence relied on and the reasons for revoking probation.[5]

Although case law tells us that the right to appeal a criminal conviction is legislatively created,[6] article V, sections 5 and 6 of the Texas Constitution vest the authority to hear the appeal of nondeath penalty criminal cases in the courts of appeals, unless an exception to the right to appeal is legislatively created.[7] The constitution, therefore, creates an absolute right to appeal criminal convictions and denial of such right must be legislatively created as a clear exception. It should be noted that we are instructed to consider even unassigned constitutional issues in the interest of justice.[8]

When the legislature initially created the deferred adjudication probation, it prohibited appeal of pretrial error before the adjudication of guilt.[9] In *Dillehey v. State*, the Court of Criminal Appeals traced the legislative discussion of the deferred adjudication statute.[10] Senators Washington and Montford expressed their concerns over the denial of the right to appeal legitimate pretrial issues.[11] Senator Washington stated, "The courts have interpreted provisions of the law now as to now allow a person to be able to appeal on a deferred adjudication where they

---

1. *See* Tex.Code Crim.Proc.Ann. art. 42.12, § 5(b) (Vernon Supp.1996).

2. *Id.*

3. *Id.* § 21(a).

4. *Id.* § 21(b).

5. *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 1761–62, 36 L.Ed.2d 656, 664 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 487–90, 92 S.Ct. 2593, 2603–05, 33 L.Ed.2d 484, 498–99 (1972); *Ruedas v. State*, 586 S.W.2d 520, 523 (Tex.Crim.App. [Panel Op.] 1979).

6. *Phynes v. State*, 828 S.W.2d 1, 2 (Tex.Crim.App. 1992).

7. Tex. Const. art. V, §§ 5, 6.

8. *See Carter v. State*, 656 S.W.2d 468, 468 (Tex. Crim.App.1983); *Smith v. State*, 513 S.W.2d 823, 829 (Tex.Crim.App.1974).

9. *See McDougal v. State*, 610 S.W.2d 509 (Tex. Crim.App.1981).

10. 815 S.W.2d 623 (Tex.Crim.App.1991).

11. *Id.* at 624–25.

can appeal from a regular probation and I think the amendment is acceptable."[12]

But Senator Washington was mistaken. Although the amendment now allows for appeal before adjudication, unlike appeal from a "regular probation," it still does not allow for review of the adjudicative procedure.[13]

The question, then, is how to insure the minimal due process guarantees mandated by the Supreme Court in *Gagnon,* when no review is permitted. Although article 42.12, section 21 requires the allegation of a violation of a condition of community supervision, article 42.12, section 5(b) permits no review. We find ourselves, then, assuring a defendant on deferred adjudication community supervision that he or she is entitled to the fundamental protections of fair play and due process, but we deprive that same defendant of any vehicle for lodging a complaint that such guarantee has been violated.

Judge Overstreet suggests in his concurring opinion in *Olowosuko v. State* that the only avenue for redress of the denial of a fundamental, constitutionally guaranteed right is through a post-conviction writ to the Court of Criminal Appeals.[14] We are left with many questions: Is this the position of the Court as a whole? Is direct appeal required before a defendant may resort to a post-conviction writ? If a defendant appeals the original plea, should the direct appeal proceed simultaneously with the request for habeas relief? How does a defendant pursue redress for denial of fundamental due process and due course of law guarantees? And, finally, do the intermediate appellate courts share the burden of reviewing fundamental due process errors in the interest of justice or does the entire burden rest on the shoulders of the Court of Criminal Appeals?

As an intermediate court, we must follow the dictates of the highest criminal court of the state. But we must understand our role in the administration of justice. Currently, we are confused, as is attested by the fact that some intermediate courts deal with constitutional errors in article 42.12, section 5 adjudications,[15] while other courts simply do not.[16]

We may not ignore the mandates of the Court of Criminal Appeals, but we may beg for guidance.

---

**12.** *Id.* at 625.

**13.** *Phynes,* 828 S.W.2d at 2.

**14.** 826 S.W.2d 940, 942 n. 2 (Tex.Crim.App. 1992) (Overstreet, J., concurring).

**15.** *See, e.g., Gilbert v. State,* 852 S.W.2d 623 (Tex.App.—Amarillo 1993, no pet.); *De Leon v. State,* 797 S.W.2d 186 (Tex.App.—Corpus Christi 1990, no pet.); *Eldridge v. State,* 731 S.W.2d 618

(Tex.App.—Houston [1st Dist.] 1987, no pet.); *Dahlkoetter v. State,* 628 S.W.2d 255 (Tex.App.— Amarillo 1982, no pet.).

**16.** *See, e.g., Collins v. State,* 912 S.W.2d 864 (Tex.App.—Beaumont 1995, no pet.); *Osborne v. State,* 845 S.W.2d 319 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); *Ballard v. State,* 628 S.W.2d 236 (Tex.App.—Amarillo 1982, pet. ref'd).