Ibrahim ABDALLAH, Appellant,

v.

The STATE of Texas, State.

Nos. 2–95–036–CR to 2–95–038–CR.

Court of Appeals of Texas,
Fort Worth.

May 30, 1996.

Rehearing Overruled July 18, 1996.

Danny D. Burns, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney; Betty Marshall and Charles M. Mallin, Assistant Chiefs of Appellate Section; Debra Ann Windsor, Lisa Mullen, Assistant Criminal District Attorneys, Fort Worth, for Appellee.

Before DAY, RICHARDS and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

Ibrahim Abdallah, also known as Abohem Mohammed Turabi, was charged with three offenses, each in a separate indictment. He pled guilty to each offense: theft of stolen property, sexual assault and engaging in organized crime. Abdallah was placed on deferred adjudication probation for each offense, and a condition for probation on each offense was that he participate in a sex offender counseling/treatment program at the direction of the probation officer and/or the court.

Abdallah did not complete the program, and the State petitioned that all three cases proceed to adjudication on the ground that he had violated conditions of his probation. After a hearing, the court granted the State's

petitions, assessed Abdallah's punishment for each offense at ten years' confinement in the Institutional Division of the Department of Criminal Justice, and ordered that the sentences be served concurrently.

English is not Abdallah's native language, and he contends that he was denied his right to confront witnesses because the court erred by not making a sua sponte appointment of an interpreter for him. He also asserts that he was denied due process of law because the probation condition that required him to participate in the sex offender treatment/counseling program was not specific enough to notify him of the terms of that condition.

We dismiss this appeal because our laws do not provide for appeal from a trial court's determination to proceed with an adjudication of guilt, and neither of Abdallah's points of error are directed to the judgment adjudicating his guilt of the offenses for which he was indicted.

When Abdallah was granted probation, he signed his name, using the English alphabet, to three written waivers, one for each of the offenses charged. Each of the waivers includes Abdallah's statement that "I am able to read the English language and fully understand each of the written plea admonishments by the Court and I have no questions." Under Abdallah's signature at the end of each waiver is the following statement signed by Abdallah's attorney: "I have fully reviewed and explained the above and foregoing court admonishments, rights, and waivers to [Abdallah] and am satisfied that [he] is legally competent and has intelligently, knowingly, and voluntarily waived his rights and will plead guilty understanding the consequences thereof."

When the hearing on adjudication of guilt began, the trial judge informed Abdallah that the hearing's purpose was to consider allegations that Abdallah had violated the terms and conditions of his probation. The exchange between the judge and Abdallah was in the English language, and Abdallah displayed no problems with comprehension of the situation until the judge began asking whether Abdallah pled "true" or "not true" to the alleged violations of probation. At that point, it appears obvious that Abdallah did not want to be restricted to entering a plea as the judge had requested, but wanted instead to *explain his viewpoint* about the reasons for his discharge from the treatment/counseling program.

Probation Officer Lawrin Dean testified that Abdallah was enrolled in the sex offender/counseling program and later discharged by its administrators because "[t]hey had not seen him for several months," and he had not completed the required evaluation process. Officer Dean expressed concern that, because of "the language problem," Abdallah may not have understood when to attend the program, so Dean arranged for Abdallah's readmittance. Abdallah then attended group therapy sessions but again was discharged because "[h]e was verbally assaultive during group, threatening. Other members of the group felt that they were being threatened."

■ The mere fact that an accused is more fluent in a language other than English does not require the trial court to appoint an interpreter if the accused speaks and understands the English language. *Flores v. State,* 509 S.W.2d 580, 581 (Tex.Crim.App. 1974); *Vargas v. State,* 627 S.W.2d 785, 787 (Tex.App.—San Antonio 1982, no pet.).

The record of Abdallah's testimony at the hearing on the State's petitions to proceed to adjudication shows that Abdallah was called as a witness by his own attorney. His attorney admonished him, in English, that "[i]f you do not understand my questions, by all means, ask me to either repeat them, or to qualify them, or to restate them," and Abdallah agreed. On both direct and cross-examination, all of the lawyers' questions and all of Abdallah's answers were in the English language, and it is clear that Abdallah understood the questions and answered them intelligibly in understandable English.

■ The constitutional right of confrontation means something more than merely bringing the accused and the witnesses face to face; it embodies and carries with it the valuable right of cross-examination of the witness. *Baltierra v. State,* 586 S.W.2d 553, 557 (Tex.Crim.App.1979). To avail the right of cross-examination, an accused must comprehend the testimony of the witness or have it explained to him by counsel or an interpreter. *Id.* The right to have trial proceedings interpreted to the accused in a language

he can understand is a part of the constitutional right to confrontation. *Vasquez v. State*, 819 S.W.2d 932, 937 (Tex.App.—Corpus Christi 1991, pet. ref'd.).

Once a trial court determines that the accused does not understand and speak the English language, it must grant any party's motion to appoint an interpreter or make the appointment sua sponte in the absence of a motion. *See* TEX.CODE CRIM.PROC.ANN. art. 38.30 (Vernon Supp.1996). Abdallah did not ask the trial court to appoint an interpreter for him, and he raises the complaint for the first time on appeal.

■ The first point of error is an argument that Abdallah lacked proficiency in the English language and could not understand the proceedings against him at the hearing of the State's petitions for adjudication. Abdallah avers that his lack of comprehension should have been obvious to the court and should have prompted a sua sponte appointment of an interpreter. He contends that we should reverse and remand for new trial because the lack of an interpreter denied him the right to confront the witnesses against him, violating article I, section 10 of the Texas Constitution and the Sixth and Fourteenth Amendments to the United States Constitution.

The State replies that Abdallah's first point of error is merely an allegation of error in the trial court's decision to adjudicate and therefore the point should be dismissed because a defendant has no right to appeal that type of decision. *See* TEX.CODE CRIM.PROC. ANN. art. 42.12, § 5(b) (Vernon Supp.1996); *Phynes v. State*, 828 S.W.2d 1, 2 (Tex.Crim. App.1992):

> Art. 42.12, Sec. 5(b) specifically provides that there shall be no appeal taken from the trial court's determination to adjudicate. It has long since been recognized that the United States Constitution does not require a state to provide appellate courts or a right to appellate review of criminal convictions. It is clear, therefore, that a state may limit or even deny the right to appeal a criminal conviction. Similarly, as there is nothing in the Texas Constitution which guarantees the right to appeal a criminal conviction, that right is only as provided by the legislature. It naturally follows that when a legislative enactment says an accused may not appeal a determination to adjudicate, there is no right to do so. Therefore, even if appellant's right to counsel was violated, he may not use direct appeal as the vehicle which [sic] to seek redress.

*Phynes*, 828 S.W.2d at 2 (footnotes omitted).

It may be arguable that when an accused appeals the question of whether he was entitled to an interpreter as part of his constitutional right to confront witnesses, he is only appealing a pretrial issue and not the trial court's decision to adjudicate. However, a direct appeal still would be needed as a vehicle for such an argument, which found no favor in the analogous case of *Phynes*, which involved the constitutional right of a probationer-accused to be represented by counsel at a hearing to proceed to adjudication.

We hold that point of error number one presents an appeal from the trial court's determination to proceed with an adjudication of Abdallah's guilt, and article 42.12, section 5(b) prohibits such an appeal. Accordingly, we do not decide the questions of whether the record of Abdallah's plea agreements and the hearing of the State's petitions for adjudication demonstrate that Abdallah sufficiently understood and spoke the English language or whether the omission of a sua sponte appointment of an interpreter was error.

Point of error number one is dismissed.

■ Abdallah's second point of error is that he was denied due process of law by having his deferred adjudications adjudicated on a condition of probation that was not specific enough to notify him of the performance required to fulfill that condition.

■ The State replies that Abdallah's second point is yet another attempt to appeal the trial court's determination to proceed with an adjudication of guilt. We agree and hold that no appeal may be taken from the trial court's determination to proceed with an adjudication of guilt. *See* TEX.CODE CRIM. PROC.ANN. art. 42.12, § 5(b) (Vernon Supp. 1996). A trial court's decision to proceed with an adjudication of guilt is one of abso-

lute nonreviewable discretion. *Olowosuko v. State,* 826 S.W.2d 940, 942 (Tex.Crim.App. 1992).

The second point of error presents no attack on the trial court's judgment of Abdallah's guilt of the three offenses for which he was indicted, and the second point of error is dismissed.

Having found that the law requires us to dismiss both of Abdallah's points of error, we hold that nothing is presented for appellate review, and the appeal is dismissed.

DAUPHINOT, J. (nonpanel), filed a concurring opinion.

DAUPHINOT, Justice, concurring.

In the case before us, the majority holds that we do not have jurisdiction to review Abdallah's contentions that he was denied his constitutional right to confront the witnesses against him at the adjudication hearing and, also, that he was denied due process of law because his conditions of probation were too vague. As I understand current law, I am constrained to concur.[1]

Article 42.12, section 5(b) has created a veritable Gordian Knot for the intermediate appellate courts.[2] It provides that a defendant is entitled to a hearing limited to the determination by the court of whether to proceed to an adjudication of guilt on the original charge. Yet, it further provides that no appeal may be taken from this determination.

Section 5(b) also establishes that the defendant may be arrested and detained as provided in section 21 of article 42.12.[3] Section 21 states that a warrant may issue for violation of any of the conditions of community supervision.[4] After a hearing, the judge may either continue, extend, modify, or revoke community supervision.[5] Section 21 presupposes the filing of a motion alleging violations of the conditions of community supervision.

The United States Supreme Court has enunciated the minimum requirements of due process that must be observed in probation revocation hearings. They include: written notice of the claimed violations of probation, disclosure to the probationer of the evidence against him, the opportunity to be heard in person, and by counsel, and to present witnesses, the right to confront and cross-examine adverse witnesses, a "neutral and detached" hearing body, and a written statement by the fact finder as to the evidence relied on and the reasons for revoking probation.[6]

Although case law tells us that the right to appeal a criminal conviction is legislatively created,[7] article 5, sections 5 and 6 of the Texas Constitution vest the authority to hear the appeal of nondeath penalty criminal cases in the courts of appeal, unless an exception to the right to appeal is legislatively created.[8] The Constitution, therefore, creates an absolute right to appeal criminal convictions and denial of such right must be legislatively created as a clear exception. It should be noted that we are instructed to consider even unassigned constitutional issues in the interest of justice.[9]

When the legislature initially created the deferred adjudication probation, it prohibited appeal of pretrial error before the adjudication of guilt.[10] In *Dillehey v. State,* the

---

**1.** I have previously voiced these concerns in my concurrence in *Jarour v. State,* 923 S.W.2d 174 (Tex.App.—Fort Worth, 1996, no pet. h.) (Dauphinot, J., concurring).

**2.** *See* Tex.Code Crim.Proc.Ann. art. 42.12, § 5(b) (Vernon Supp.1996).

**3.** *Id.*

**4.** *Id.* § 21(a).

**5.** *Id.* § 21(b).

**6.** *Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 1761–62, 36 L.Ed.2d 656, 664 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 487–90, 92

S.Ct. 2593, 2603–05, 33 L.Ed.2d 484, 498–99 (1972); *Ruedas v. State,* 586 S.W.2d 520, 523 (Tex.Crim.App. [Panel Op.] 1979).

**7.** *Phynes v. State,* 828 S.W.2d 1, 2 (Tex.Crim.App. 1992).

**8.** Tex. Const. art. V, §§ 5, 6.

**9.** *See Carter v. State,* 656 S.W.2d 468, 469 (Tex. Crim.App.1983); *Smith v. State,* 513 S.W.2d 823, 829 (Tex.Crim.App.1974).

**10.** *See McDougal v. State,* 610 S.W.2d 509 (Tex. Crim.App.1981).

Court of Criminal Appeals traced the legislative discussion of the deferred adjudication statute.[11] Senators Washington and Montford expressed their concerns over the denial of the right to appeal legitimate pretrial issues.[12] Senator Washington stated, "[T]he courts have interpreted provisions of the law now as to now allow a person to be able to appeal on a deferred adjudication where they can appeal from a regular probation and I think the amendment is acceptable." [13]

But Senator Washington was mistaken. Although the amendment now allows for appeal before adjudication, unlike appeal from a "regular probation," it still does not allow for review of the adjudicative procedure.[14]

The question, then, is how to insure the minimal due process guarantees mandated by the Supreme Court in *Gagnon*, when no review is permitted. Although article 42.12, section 21 requires the allegation of a violation of a condition of community supervision, article 42.12, section 5(b) permits no review. We find ourselves, then, assuring a defendant on deferred adjudication community supervision that he or she is entitled to the fundamental protections of fair play and due process, but we deprive that same defendant of any vehicle for lodging a complaint that such guarantee has been violated.

Judge Overstreet suggests in his concurring opinion in *Olowosuko v. State* that the only avenue for redress of the denial of a fundamental, constitutionally guaranteed right is through a post-conviction writ to the Court of Criminal Appeals.[15] We are left with many questions: Is this the position of the Court as a whole? Is direct appeal required before a defendant may resort to a post-conviction writ? If a defendant appeals the original plea, should the direct appeal proceed simultaneously with the request for habeas relief? How does a defendant pursue

redress for denial of fundamental due process and due course of law guarantees? And, finally, do the intermediate appellate courts share the burden of reviewing fundamental due process errors in the interest of justice or does the entire burden rest on the shoulders of the Court of Criminal Appeals?

As an intermediate court, we must follow the dictates of the highest criminal court of the state. But we must understand our role in the administration of justice. Currently, we are confused, as is attested by the fact that some intermediate courts deal with constitutional errors in article 42.12, section 5 adjudications,[16] while other courts simply do not.[17]

We may not ignore the mandates of the Court of Criminal Appeals, but we may beg for guidance.

11. 815 S.W.2d 623 (Tex.Crim.App.1991).

12. *Id.* at 624–25.

13. *Id.* at 625.

14. *Phynes*, 828 S.W.2d at 2.

15. 826 S.W.2d 940, 942 n. 2 (Tex.Crim.App. 1992) (Overstreet, J., concurring).

16. *See, e.g., Gilbert v. State*, 852 S.W.2d 623 (Tex.App.—Amarillo 1993, no pet.); *De Leon v.* State, 797 S.W.2d 186 (Tex.App.—Corpus Christi 1990, no pet.); *Eldridge v. State*, 731 S.W.2d 618 (Tex.App.—Houston [1st Dist.] 1987, no pet.); *Dahlkoetter v. State*, 628 S.W.2d 255 (Tex.App.—Amarillo 1982, no pet.).

17. *See, e.g., Collins v. State*, 912 S.W.2d 864 (Tex.App.—Beaumont 1995, no pet.); *Osborne v. State*, 845 S.W.2d 319 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); *Ballard v. State*, 628 S.W.2d 236 (Tex.App.—Amarillo 1982, pet. ref'd).